EMMA CHOATE & another *vs.* TOWN OF SHARON.

Norfolk.    November 15, 1926. — May 20, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Eminent Domain,* Validity of taking.    *Municipal Corporations,* Vote at town meeting.    *Equity Pleading and Practice,* Finding by judge.    *Damages,* For property taken or damaged under statutory authority.

An owner of land in Sharon sought by a bill in equity to enjoin the town from diverting drainage water over his premises and for damages. The town sought to justify its conduct by a taking under a proper vote authorizing and instructing the selectmen "to purchase or take by eminent domain . . . the following described easement. . . . The right to locate, construct and forever maintain a drain for a portion of North Main Street in said town over, through or under the following described parcel together with the drainage of any brook or water course from said North Main Street as may naturally flow over said parcel [ then followed a description by bounds, courses and distances of specific land of the plaintiff, together with an appropriation of money therefor ]." As bearing on the binding force of this vote of the town, the plaintiff offered evidence tending to show that, before the town meeting, easements had been acquired by the town from owners of land adjoining the land of

the plaintiff to do the very things sought to be acquired by the easement over the plaintiff's land, and that the warrant committee of the town, whose duty it was to study the various articles in the warrant and to make written report on each article by notice mailed to the voters before the meeting, made no mention of the easements already acquired, although knowing of them. *Held*, that the deliberate vote of the town could not be set aside by reason of the facts set forth in the offer of proof.

The suit above described was begun on November 14, 1923. On January 18, 1924, the defendant filed a plea setting up that under the vote above quoted, which was adopted on December 18, 1923, the defendant on December 20 made a taking of the easement therein described. At a hearing on the plea, the plaintiff contended that the taking was invalid because informal and also that the vote of the town was invalid because procured by bad faith of its officers. The judge ruled that the taking was unlawful because the requirements of G. L. c. 79 were not fulfilled, and found that the town had acted in good faith. The selectmen then under the same vote made a new taking on May 15, 1924, and filed an answer to the suit justifying thereunder. The plaintiff offered the same evidence on the question of bad faith. The evidence was excluded, the judge relying on his former finding. *Held*, that

(1) The former finding on the question of bad faith rightly should stand as final as to matters in the case to which it was material; the judge was not required to go over that ground again;

(2) The circumstance, that there had been an earlier and ineffectual attempt to make a taking, invalid because not effected in the manner provided by G. L. c. 79, did not exhaust the authority conferred by the vote of the town nor prevent the selectmen from making a valid taking pursuant to its direction within a reasonable time, regardless of their previous abortive effort;

(3) There being nothing to indicate that the exercise of the easement would interfere with trees, the fact that the order of taking did not refer to trees did not affect its validity;

(4) While the exercise of the power of eminent domain must be so definite and specific in terms as to identify the land or easement taken with the certainty and precision required in a deed, the instrument of taking of an easement must be construed in connection with the physical features of the land in the neighborhood in the light of which it was framed; so construed, on the record, the taking was not too vague or indefinite, but was susceptible of certainty when applied to North Main Street as then constructed and maintained.

(5) On the pleadings an assessment of money damages for injuries sustained by the plaintiff prior to the taking was permissible and proper procedure.

BILL IN EQUITY, filed in the Superior Court on November 14, 1923, alleging, in substance, that the defendant unlawfully was diverting drainage water upon and over the plaintiffs' land, seeking to enjoin such action, and damages.

On January 18, 1924, the defendant filed a plea asserting that on December 20, 1923, it had taken by "eminent domain an easement in the plaintiffs' land to do the things sought by the plaintiffs' bill to be enjoined and restrained." This plea was heard by *Weed*, J. The plaintiffs contended that the taking of December 20, 1923, was invalid both for informality and by reason of bad faith. The judge ruled that the taking of December 20 was void for the sole reason that it was not effected in the manner provided by G. L. c. 79, to wit: by the adoption by the selectmen of an order of taking such as was required by said chapter; and upon said ruling found that the defendant's plea was not true in fact and ordered that an interlocutory decree be entered in accordance with such finding. He also found:

"On or about October 20, 1923, the town through its selectmen acquired by grant from Elvira Larnard and others, the owners of the land adjoining the plaintiffs' land on the north, 'the right to lay and maintain a covered pipe or drain for the purpose of conducting water flowing to and upon said North Main Street, and connecting with such pipe or drain any brooks, water courses, catch-basins or other appurtenances as may be necessary to pass water coming to or collecting on said Main Street at the place of said easement,' and from Villa F. Hanson, the owner of the land lying at the west of the said land; and also of the land of the plaintiffs' described in said alleged taking, 'the right to flow water from the drainage of North Main Street and any brook, watercourse, catch basin, conduit as may be now collected or brought to a point on North Main Street in said Sharon, which point is at the dividing line between the properties now held by Elvira Larnard, et als., and Emma Choate, et al., on the northwesterly side of said North Main Street. Meaning to convey the right to allow all flowage from a pipe or covered drain to be laid in the land of said Larnard to pass over my lands in the rear of said Larnard by the natural water course or way over my lands for the said land of Larnard to and through the swamp area in my lands.' Prior to said town meeting the warrant committee, whose duty it was to study the several articles in the warrant and to make a

written report on each article to the voters by notice mailed
to them before the meeting, prepared such a notice and
mailed the same to the voters but made no mention therein
of the Larnard or Hanson easements.   At said town meeting
in the discussion of the proposed taking from the plaintiffs
no mention was made by the selectmen or warrant committee
or finance committee of the fact that the easements just
described had been acquired. . . .

"Should it become material in any future consideration of
the case, the court finds that the alleged taking was made in
good faith and that if it be valid the town thereby acquired
an easement in the plaintiffs' land to do the things sought by
the plaintiffs' bill to be enjoined and restrained."

On August 25, 1924, the defendant filed an answer, which
afterwards was amended, setting forth among other allega-
tions that "on or about May 15, 1924, the town of Sharon took
by eminent domain an easement in the plaintiffs' land to do
the things sought by the plaintiffs' bill to be enjoined and
restrained."

The suit then was further heard by *Weed,* J., the evidence
not being reported.   The plaintiffs again contended on the
same ground as at the earlier hearing on the plea, that the
vote at the town meeting of December 18, 1923, had been
procured through conduct amounting to bad faith on the
part of the town officers.   The judge excluded such evidence.

The facts found by the judge at the second hearing are
described in the opinion.   He ruled "that the defendant by
said taking of May 15, 1924, acquired an easement in and
over the plaintiffs' land described in said taking to do the
things sought by the bill to be enjoined and restrained; and
that the plaintiffs are not entitled to the injunctive relief
prayed for."

The judge further ruled: "Evidence was offered of the
damages suffered by the plaintiffs prior to said taking by
reason of said additional water gathered and discharged upon
their land by means of the catch basins and drains constructed
in 1919 and 1923 as above described, and upon all of the
evidence, I find said damages to be the sum of $50 and that

the defendant owes the plaintiffs the said sum with interest from May 15, 1924."

In reporting his ruling upon the exclusion of the evidence on the question of bad faith, the judge annexed the finding and ruling he had made at the previous hearing, which is quoted above.

The judge reserved and reported the case to this court for determination.

*C. L. Carr,* for the plaintiffs.

*E. O. Proctor,* for the defendant.

Rugg, C.J.    This is a suit in equity wherein the plaintiffs seek to restrain the defendant from entering upon land alleged to belong to them, and to recover damages. The case was reported by the trial judge upon the sole question whether his ruling was correct to the effect that the taking made by the defendant on May 15, 1924, was valid. A subsidiary ruling as to the exclusion of evidence also is reported.

The facts found by the judge with respect to all matters must be accepted as true and final, because the evidence on which they are based is not reported.

At a town meeting of the defendant held on December 18, 1923, upon a sufficient article in the warrant, it was voted by more than a two-thirds majority "That the Town does hereby authorize and instruct the Selectmen to purchase or take by eminent domain . . . the following described easement. . . . The right to locate, construct and forever maintain a drain for a portion of North Main Street in said town over, through or under the following described parcel together with the drainage of any brook or water course from said North Main Street as may naturally flow over said parcel." Then follows a description by bounds, courses and distances of specific land of the plaintiffs, together with an appropriation of money therefor. St. 1923, c. 266.

The vote of the town was legal on its face and there is nothing in the findings of fact to impeach its validity. As bearing on the binding force of this vote of the town, the plaintiffs offered evidence tending to show that, before the town meeting, easements had been acquired by the town from owners of land adjoining the land of the plaintiffs to do

the very things sought to be acquired by the easement over the plaintiffs' land, and that the warrant committee of the town, whose duty it was to study the various articles in the warrant and to make written report on each article by notice mailed to the voters before the meeting, made no mention of the easements already acquired, although knowing of them. It does not appear that there was any failure of duty on the part of the warrant committee, nor that the fact that other easements had been acquired was of essential importance with respect to the taking of the easement over land of the plaintiffs. Moreover, the whole matter was before the town at the meeting and all material facts could have been elicited by inquiry and debate, when the article was under consideration, although no mention was made of such easements. The deliberate vote of the town could not be set aside by reason of the facts set forth in the offer of proof. The case in this respect is distinguishable from *Loring* v. *Westwood*, 238 Mass. 9, and also from *Wood* v. *Milton*, 197 Mass. 531. There was no error in the exclusion of the evidence offered.

There had previously been filed a plea which the court had found not true because of an earlier insufficient taking, but upon that hearing the judge had found that there was no bad faith in respect to the town meeting and the other action by the town. That finding rightly should stand as final as to matters in the case as to which it was material. The judge was not required to go over that ground again, but could accept it for what it was worth in connection with the other facts found by him on evidence presented at the hearing on issues raised by the answer.

The instrument of taking was in form and execution in conformity to the requirements of G. L. c. 79, §§ 1, 3, 6, and was filed at the place and within the time there specified. The circumstance that there had been an earlier and ineffectual attempt to make a taking, invalid because not effected in the manner provided by said c. 79, did not exhaust the authority conferred by the vote of the town nor prevent the selectmen from making a valid taking pursuant to its direction within a reasonable time, regardless of their previous abortive effort. Since the earlier attempt to make a taking

was void because of failure to comply with statutory requirements, it was as if nothing had been done and there was no bar to a valid taking. *Williams* v. *Hartford & New-Haven Rail-Road,* 13 Conn. 397, 410, 411. *Leheigh Valley Railroad* v. *Dover & Rockaway Railroad,* 14 Vroom, 528, 531. *Trustees of Cincinnati Southern Railway* v. *Haas,* 42 Ohio St. 239. *Ashton Vale Iron Co. Ltd.* v. *Bristol Corp.* [1901] 1 Ch. 591, 600. See *Breckwood Real Estate Co.* v. *Springfield,* 258 Mass. 111, 113. An award of damages of $54 was made in connection with the order of taking, and check therefor sent to the plaintiffs and by them returned. The order did not refer to the trees upon the land described. The taking was of an easement only and not of the fee. There is nothing to indicate that the exercise of the easement would interfere with the trees. The failure to refer to them does not invalidate the taking.

The main attack upon the validity of the taking is that the vital words describing the nature and extent of the easement seized, namely, the right to locate, construct and forever maintain "a drain for a portion of North Main Street," are so vague and indefinite as not to constitute a valid exercise of the power of eminent domain. The instrument of taking of an easement must be construed in connection with the physical features of the land in the neighborhood, in the light of which it was framed. The parcel of land described by bounds, courses and distances and in which the easement was taken, was a natural shallow gully with a well defined irregular channel through it. · The judge in his careful and exhaustive findings of fact shows that the portion of North Main Street lying southerly of the area described in the taking, from near the center of the town slopes gently downward to the property taken. He concludes with the statement in substance that upon all the evidence he finds that the defendant, at the time of filing the bill, by means of catch basins and underground pipes and a culvert, was intercepting and gathering surface water on that portion of North Main Street from the crest of the hill to the land described and such surface water as reached North Main Street over abutting private lands and intersecting streets, and was discharging

the same through its pipes and culverts upon the plaintiffs' land described in the taking, and that from a considerable part of the area so drained surface water would not naturally flow in the gully over the land taken from the plaintiffs, and that by means of catchbasins and pipes there had been an increase in volume and an acceleration in the flow of surface water in said gully. Without narrating further the facts found, it is enough to say that the words of the taking of the right to "a drain for a portion of North Main Street" over the land described, when read in the light of the physical features of that street and its connecting streets and the natural means of drainage adopted for such streets, mean a right to drain the territory actually drained over the land taken as shown by the findings. The taking is not too vague or indefinite, but is susceptible of certainty when applied to North Main Street as then constructed and maintained. Of course the exercise of the power of eminent domain must be so definite and specific in terms as to identify the land or easement taken with the certainty and precision required in a deed. *Lajoie* v. *Lowell,* 214 Mass. 8, 9. *Excelsior Needle Co.* v. *City Council of Springfield,* 221 Mass. 34, 37. *Byfield* v. *Newton,* 247 Mass. 46, 57. See in this connection *Diamond* v. *North Attleborough,* 219 Mass. 587, and *Dupuis* v. *Fall River,* 223 Mass. 73. The taking here assailed conforms to that requirement for the valid exercise of eminent domain. *Hurd* v. *General Electric Co.* 215 Mass. 358. *Bailey* v. *Woburn,* 126 Mass. 416. *Eames* v. *Collins,* 107 Mass. 594. *Pettee* v. *Hawes,* 13 Pick. 323, 326. *Otter Tail Power Co.* v. *Brastad,* 128 Minn. 415, 418–421. See *Turner* v. *Gardner,* 216 Mass. 65, and cases there collected. Cases upon which the plaintiffs rely, like *Suffolk County Telephone Co.* v. *Gammon,* 113 App. Div. (N. Y.) 764, and *New York & New Jersey Telephone Co.* v. *Broome,* 21 Vroom, 432, are plainly distinguishable. The ruling that, upon the facts found, the defendant acquired an easement in and over the plaintiffs' land described in the taking of May 15, 1924, to do the things sought to be enjoined, and that the plaintiffs are not entitled to injunctive relief, was right.

The assessment of money damages for injuries sustained

by the plaintiffs prior to the taking also was permissible and proper procedure. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 47.

In conformity to the terms of the report, final decree is to be entered in accordance with the finding and order.

*Ordered accordingly.*