## MONTICELLO ELECTRIC LIGHT CO. v. CITY OF MONTICELLO et al.

Court of Appeals of Kentucky.

June 19, 1953.

Wyatt, Grafton & Grafton, C. W. Grafton, Louisville, for appellant.

Oldham Clarke, Louisville, R. B. Bertram and Bruce Phillips, Monticello, for appellees.

CULLEN, Commissioner.

In a declaratory judgment proceeding, the Wayne Circuit Court held that the City of Monticello and its Electric Plant Board are entitled to proceed, without further appraisal procedure, to acquire an electric plant under the "TVA Act," KRS 96.550 to 96.900, either by condemning the existing facilities of the privately owned Monticello Electric Light Company or by constructing a new municipal plant. The electric company, on appeal, contends that the judgment is erroneous because the city and its electric plant board, by reason of having led the company to believe that proceedings under the TVA Act had been abandoned, should be estopped to further proceed under the Act.

The electric company is operating in Monticello under a twenty-year franchise which was granted in 1933 and will expire in December 1953. In September 1947, the city adopted an ordinance, pursuant to KRS 96.740, by which the city elected to acquire an electric plant under the provisions of the TVA Act. An electric plant board was appointed, under KRS 96.740, and the board gave notice to the company, under KRS 96.580, of the desire of the board to purchase the company's plant. An appraisal was made in accordance with KRS 96.580, and in July 1948 the board rejected the appraisal, as it was entitled to do under the statute. Thereafter, early in 1949, the board notified the company that the board was no longer interested in negotiations for the purchase of the company's plant on the basis of the appraisal.

In May 1947, prior to the time of the election by the city to operate under the TVA Act, the company had placed an order for a new generating unit, to replace a unit which had become worn out during the war years. Because the old generating facilities were incapable of supplying the necessary energy, the company made a temporary arrangement to secure power from the Kentucky Utilities Company, over lines of a rural electric cooperative corporation. After the city appointed its electric plant board, and the board notified the company of its desire to purchase the distribution facilities, but not the generating facilities, of the company, the company cancelled its order for a new generating unit, and continued for a time to purchase power from Kentucky Utilities Company.

In March 1949, Kentucky Utilities Company notified the Monticello Electric Light Company that after April 30 it would discontinue supplying electric energy to Monticello. Thereupon, various meetings were held and negotiations conducted, culminating in the adoption, by the city electric plant board, of a resolution stating that the board "hereby revokes, cancels and withdraws" all proceedings theretofore taken by it under the TVA Act for the purpose of acquiring the properties of the electrict company, and reciting that "said Company is hereby authorized to rely upon the same as constituting evidence of the abandonment by this Board of all proceedings under said 'TVA Act' of Kentucky."

Following the adoption of this resolution on March 18, 1949, the company proceeded to build 14 miles of transmission lines, and a substation, by means of which it continued to be able to secure power from Kentucky Utilities Company. The record shows that the company chose to build the lines and substation, rather than acquire new generating facilities, because the company considered the former to be more feasible.

Early in 1952, new members of the city electric plant board were named, to succeed the original members whose terms had expired, and in July 1952 the board served a new notice on the company of its desire to purchase the company's plant. Negotiations were conducted with the view of agreeing on a price, but without success, and in October 1952 the board notified the company that it had selected an appraiser. About the same time, the company wrote a letter to the boa.d, stating that perhaps the company would select an appraiser, but if it did so it would be without waiver of any legal rights of the company. This letter was not answered, and the company did not name an appraiser within the period allowed by KRS 96.580 for so doing. Accordingly the board took the position, which was concurred in by the trial court, that it now has the right to proceed under subsection (2) of KRS 96.580 to condemn the existing plant or to build a new plant.

The position of the company is that by virtue of the resolution of March 18, 1949, and the expenditure of substantial sums by the company in reliance on the resolution, the city and the board should be estopped, for a reasonable period, to proceed further under the TVA Act. The company suggests that 20 years would be a reasonable period.

The rule in this jurisdiction is that a municipality is not estopped by a mistake, unauthorized act, or dereliction of duty on the part of a public official. Vaughn v. City of Williamsburg, 245 Ky. 339, 53 S.W.2d 690. We think the rule is controlling here, because we think the electric plant board was wholly unauthorized to agree to discontinue proceedings under the TVA Act, if in fact the resolution of March 18, 1949, could be construed to constitute such an agreement.

The sole purpose in the creation of the electric plant board was to acquire an electric plant for the city under the terms of the TVA Act. The board's sole function was to acquire and operate such a plant. The city, by its ordinance of September 1947, had made a firm election to proceed under the TVA Act, and it was the duty of the board to carry out that ordinance. It seems completely absurd to argue that the board could estop itself, and the city, by agreeing not to do the one and only thing that the board was created to do.

The electric company was charged with knowledge of the duties of the board

and the limitations on its powers, and therefore was not entitled to rely upon action of the board which clearly was unauthorized. City of Princeton v. Princeton Electric Light & Power Co., 166 Ky. 730, 179 S.W. 1074.

We think an additional reason exists for rejecting the plea of estoppel, in that the company did nothing in reliance on the resolution of March 18 that it was not already required by its franchise to do. The company was obligated to provide electric service for the city. When its generating facilities broke down in 1947, its franchise had a period of six years yet to run, and it had the duty to continue to provide service during that period. The company chose to make a temporary arrangement to purchase power from Kentucky Utilities Company, instead of acquiring new generating facilities, and thus placed itself in a position of being unable to meet its franchise obligations when the temporary arrangement was cancelled. And the record shows clearly that the building of the new transmission lines by the company, after the adoption of the resolution of March 18, 1949, instead of acquiring new generating facilities, was a choice made by the company on the basis of what would be to its own best interests.

The company complains that its credit was destroyed when the city gave notice of its intention to proceed under the TVA Act. We fail to see why the city should be placed in the position of justifying its taking of action which the law authorized it to take. In addition, we would asume that, if properly managed, the company should have had a depreciation reserve adequate to maintain its plant in good operating condition. The city hardly can be blamed for an adverse financial condition of the company.

A final contention of the company is that, because the city did not reply to the letter of October 1952 in which the company stated that it "possibly" would select an appraiser, the city cannot in equity and good faith assert that the company did not name an appraiser in time, and therefore the city should be compelled to

again go through the appraisal procedure provided by KRS 96.580 before being permitted to condemn the company's plant or build a new plant. As we read the letter, it did not require an answer; also, it was sent so late in the period allowed for naming appraisers that there scarcely was time for an answer. The company had received notice of the naming of an appraiser by the city electric plant board, and there was nothing to prevent the company from selecting an appraiser; nor was there anything in the conduct or actions of the board to suggest that the board would not insist on observance of the time limit for naming appraisers. We find no merit in the contention.

The judgment is affirmed.

DUNCAN, J., not sitting.