Terry L. HATCHETT et al., Appellants,

v.

CITY OF GLASGOW, Kentucky, a Municipal Corporation, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 21, 1960.

Rehearing Denied Dec. 16, 1960.

Ogden, Brown, Robertson & Marshall, Louisville, Richardson, Barrickman & Dickinson, Glasgow, for appellants.

Harry W. Berry, Wilson & Nunn, Glasgow, for appellees.

STANLEY, Commissioner.

The particular issue for decision is whether the City of Glasgow, through its Electric Plant Board, can submit by referendum at the coming November, 1960, election the question of proceeding to exercise the power of eminent domain to acquire the city electric facilities owned and operated by the Kentucky Utilities Company. The determination of the issue rests upon the construction of what is styled the "T.V.A. Act," KRS 96.550 et seq., in regard to holding such referendum election one year after the same question had been submitted to popular vote and the authority to proceed with the condemnation of the electric plant had been denied by a majority of 182.

This action to halt further proceedings by the City and the Board toward resubmitting the question is being prosecuted by several residents and taxpayers, as representatives of a class, and the Kentucky Utilities Company.

The circuit court, Honorable Thomas F. Manby, special judge, rendered a judgment favorable to the defendants, the City and Board and their several officials, that the Board has the legal right to acquire the property by complying with the provisions of KRS 96.580 and may again seek the approval of the people at the coming election, as proposed. The plaintiffs prosecute this appeal from the dismissal of their complaint and contend that the adverse popular vote of 1959 is a final determination that the electric plant should not be acquired under the T.V.A. Act. Alternatively, they argue that even if the City could at some future time again submit to popular vote the question of acquisition of the utility property, it would have to start over and comply with "all and not some" of the provisions of the statute; that is to say, the Board became a defunct body, as all power of the City and Board to proceed under the original initiat-

ing ordinance was terminated by the election.

We consider the points inversely.

■ The inception of this undertaking was the enactment of an ordinance by the city council on January 6, 1958, electing to operate under the provisions of the statute, KRS 96.740, and creating an electric plant board, as therein prescribed. Subsequent steps required by the statute were duly taken. In the absence of an agreement with the Kentucky Utilities Company for the acquisition of its plant, the Board found it to be necessary to institute condemnation proceedings. KRS 96.590. The ordinances prescribed by KRS 96.640 were duly enacted in September, 1959. The portion of the statute of particular pertinence in this case, KRS 97.640, prescribes as a condition precedent to exercising the power of eminent domain and the issuance of revenue bonds in an amount sufficient to pay the cost specified, that the question of doing so shall be submitted to the voters of the municipality and the approval of the majority obtained. The submission must be "at the next regular November election to be held in said municipality." KRS 96.-640(2, 5).

Within a month following the adverse vote of the November, 1959, referendum the city council adopted a resolution in which it commended the Board and its members for their efforts to secure low cost electric power for the citizens and directed that the Board continue its efforts to acquire the electric distribution system in Glasgow as provided in the statute. The Board promptly renewed negotiations with the company. The company advised the Board that it did not care to sell its property. Thereupon the Board and the company respectively appointed appraisers (the same persons who had previously served). They could not agree upon an evaluation or upon the choice of a third appraiser, KRS 96.580. Before either party called upon the Governor of the Commonwealth to name a third appraiser, the present suit was filed.

1. There is nothing in the statute to indicate that in case of a failure to obtain the consent of the people to institute condemnation proceedings the Electric Plant Board would be ipso facto abolished or its powers exhausted, nor is there anything to require the council to go over the ground again by passing another initiating ordinance creating the Board and authorizing it to acquire the privately owned facility or re-enact the prerequisite ordinance. The Board was created under the enabling statutes, KRS 96.740, as "a body politic and corporate, with perpetual succession." The statute vests in such a board "the express power and capacity to do any and all acts or things necessary or convenient for the carrying out of the purposes" of the act. KRS 96.-570. The board .is vested with certain broad powers with respect to acquiring, constructing and operating electric plants and systems. All of this is repugnant to the idea that the powers of the Glasgow Board were exhausted by failure in the one instance to accomplish what it set out to do. See Monticello Elec. Light Co. v. City of Monticello, Ky., 259 S.W.2d 486. The circumstance that there had been an earlier and ineffectual attempt to take over property under a city ordinance authorizing it has been held not to exhaust the authority conferred nor preclude a subsequent exercise of the power within a reasonable time. Choate v. Town of Sharon, 259 Mass. 478, 156 N.E. 727, cited 29 C.J.S. Eminent Domain § 94; Nicols on Eminent Domain, § 3.212.

The trial court properly held that the Board was not abolished nor its powers exhausted and that it could proceed under the original ordinance.

2. The argument of finality of the rejection by a majority of the votes cast in the November, 1959, plebiscite seems to be, in essence, that the statute never contemplated that a privately owned utility company should be kept under continual harrassment with the consequence of either putting in jeopardy great expenditures for necessary replacements and betterments or

permitting its property to deteriorate. More specifically, the attack is made upon having the question resubmitted only one year after the vote against acquisition of the property by the City.

As stated above, the statute prescribes that after observing other preliminary conditions for the exercise of the power of eminent domain, the Board must obtain the assent of the voters of the City "at the next regular November election." KRS 96.640 (2, 5).

The appellants recognize that the statute does not specifically bar holding more than one such referendum or holding another after the lapse of one year. Their contention is that such resubmission could not have been reasonably contemplated by the Legislature, especially after such a brief interval. But the statute prescribes no waiting period of repose.[1]

The T.V.A. Act is a comprehensive statute. It states twice that its provisions shall be the complete law of the state with respect to municipalities acquiring electric plants. KRS 96.560, subsections 2 and 4. The statute must be interpreted by what it says, expressly or inferentially, and not by what it might have said. It must be construed according to what was included and not by what might have been included.

■ The courts may supply clerical or grammatical omissions in obscure phrases or language of a statute in order to give effect to the intention of the Legislature, presumed or ascertainable from the context, or to rescue the act from an absurdity. City of Owensboro v. Noffsinger, Ky., 280 S.W.2d 517. But where a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus,* or cure an omission, however just or desirable it might be to supply an omitted provision.

It makes no difference that it appears the omission was mere oversight. Barron v. Kaufman, 131 Ky. 642, 115 S.W. 787; Commonwealth v. Lipginski, 212 Ky. 366, 279 S.W. 339; Bedinger v. Gray, Ky., 302 S.W.2d 594. The present statute is clear in providing for the submission of the question described "at the next * * * November election" following the observance of the prerequisite procedural steps. There is no other limitation on the submission of the question to the voters. To insert or supply by construction the limitations contended for would be an act of legislation and not an act of judicial construction. The statute by construction cannot be extended or enlarged beyond its fair import.

■ The appellants argue that general public policy and the equities of the case justify the conclusion that the repeated submissions to a referendum, or, at least, the early resubmission, is not contemplated by the statute. The principal reasons, aside from the absence of any provision indicating that one or more subsequent elections may be held, are thus summarized: (1) It was never intended that there should be a multiplicity of elections; or (2) that the municipal officials should persist in the effort to acquire the properties after it has been rejected by the people; and (3) their action is an evasion and disregard of the decision of the citizens of Glasgow. All of these grounds run up against the explicit terms of the statute. The Legislature determines the public policy as to elections subject to Section 148 of the Constitution, which declares that not more than one election shall be held each year except special elections otherwise provided for by the Constitution. The proposed action here does not violate that policy. Stagg v Board of Education, Ky., 303 S.W.2d 313.

Factual differences distinguish the cases cited on the claim of evasion by municipal

1. See such instances KRS 67.020(4), 67.-050(2), 89.290, 89.380, 242.030(5). But statutes expressly provide for resubmission at succeeding elections of referendums on repealing or amending ordinances. See 89.250(2), 89.610(2).

authorities, and we do not consider them applicable.

In support of ground (2) above stated, the appellants rely heavily on City of Williamsport v. Williamsport Water Co., 300 Pa. 439, 150 A. 652, 655. There is much in the reasoning of the opinion favorable to their argument as to the unjustness of holding that a city may at intervals submit the question of acquiring a municipal utility to the electorate until a favorable vote may be obtained. But the facts of the case are materially different. In 1907 the City of Williamsport passed a resolution, under authority of a statute, declaring its intention to acquire a water plant serving the city. The execution of the purpose was subject to obtaining the assent of the people at an election to increasing the City's indebtedness. Proceedings to compel the water company to convey the water plant to the City were commenced in 1917. In 1920 there was a consent judgment fixing a price, and in November of that year the people voted down the project by refusing to assent to increasing the City's indebtedness necessary to consummate the purchase. From that time until 1927 the City did nothing to effectuate the proposal. In August of that year, 1927, the City passed a new resolution of the same effect, and at the election thereon in that year a majority of the votes were cast in favor of the proposal. In a declaratory judgment suit the City asserted its right to buy the property under the 1917 resolution at the price fixed in the 1920 judgment. We gather from the opinion that there were several material changes in both the law and the factual conditions between the adoption of the initial resolution and the 1920 judgment and the year 1927 when steps were resumed. The court held, inter alia, that the adverse vote of the electors in 1920 terminated the right of the City to take over the plant under the resolution of June 1, 1907, and made the agreed judgment ineffectual. The court regarded the affirmative vote of the people to be one of the conditions of the intended purchase, and that not having been obtained under the original resolution to buy the property, the matter was concluded and there could be no consummation of the purchase. Another ground of the decision was that the lapse of time was a bar, the court saying, "In matters such as this, the law contemplates a proceeding at least reasonably continuous, and the long break from the beginning to the end of the proceeding, even if there had been no adverse electoral vote, bars the municipality from continuing." The court regarded the City as it would any other purchaser of property, and held that when its principals—the electors—determined not to buy the property, all proceedings were at an end. It does not appear that there was any statute involved except that which authorized the City to purchase the property.

In the present case we have only the withholding by the citizens of authority of the Glasgow Electric Plant Board to condemn the property and issue revenue bonds for its cost. This is not a definite rejection in an interparty transaction. In the Pennsylvania case the ground of objection was the prolonged suspense. In this case the ground is too short a period. Here there was continuity; and the equitable principle of laches, which appears in the Pennsylvania court's reasoning, is foreign to the case.

■ The plaintiffs challenged the validity of the action of the Glasgow council in adopting a motion that "the city loan Electric Plant Board $3,000 to be repaid from the proceeds of the revenue bonds." It appears that this temporary appropriation was for the payment of obligations previously incurred in the attempt to acquire the electric distribution system, and was payable out of the general fund. This cannot be regarded as a misappropriation. It is authorized by KRS 96.730(1).

We are of opinion the judgment should be and it is

Affirmed.