RENDERED: FEBRUARY 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0449-DG

COMMONWEALTH OF KENTUCKY                                                APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                                   NO. 2023-CA-0769
HENDERSON CIRCUIT COURT
NO. 22-CR-00211


RUSSELL T. AMBOREE                                                        APPELLEE


**OPINION OF THE COURT BY JUSTICE CONLEY**

**AFFIRMING**

This case is before the Court upon discretionary review after the Court of Appeals vacated the Appellee's, Russell Amboree, six-year sentence for two counts of Possession of a Controlled Substance (POCS), first degree under KRS[1] 218A.1415. The Commonwealth sought discretionary review arguing the Court of Appeals' opinion conflicts with *Eldridge v. Commonwealth*, 479 S.W.3d 614 (Ky. App. 2015). Upon review, we conclude the plain language of KRS 218A.1415(2)(a) prohibits any application of KRS Chapter 532 that would increase the term of incarceration for POCS convictions beyond three years. The Court of Appeals is affirmed.

---

[1] Kentucky Revised Statutes.

## I.  Facts and Procedural Posture

Russell Amboree was convicted by a jury of two counts of POCS, first degree under KRS 218A.1415(1). These are class D felonies. KRS 218A.1415(2). Amboree was also convicted of a Class B misdemeanor, possession of marijuana. KRS 218A.1422. The jury recommended the maximum three-year penalty for each POCS conviction to be served consecutively for a total of six years. It also recommended a forty-five-day sentence for the marijuana possession to be served concurrently.

At his sentencing hearing, Amboree argued to the trial court that a six-year sentence exceeded the statutory maximum of three years. The trial court ignored his objection. The trial court asked if Amboree understood the jury's recommendation, and he again repeated his belief that the recommendation exceeded the maximum penalty allowed. The trial court asked a second time if he understood the recommendation, and when Amboree replied in the affirmative, it imposed the six-year sentence. Amboree appealed.

At the Court of Appeals, both parties relied upon *Eldridge v. Commonwealth* to support their position, and both parties relied upon various provisions of KRS Chapter 532. Amboree focused on language in KRS 532.080 while the Commonwealth focused on KRS 532.110(1)(c). Relying upon KRS 532.080(8), which excludes convictions under KRS 218A.1415, the Court of Appeals held,

> Subsection (8) prevents other provisions of the PFO statute from enhancing sentences for possession beyond the three-year limit in KRS 218A.1415(2)(a). Because the PFO statute authorizes nothing beyond the maximum three-year sentence for possession, circuit

courts may not impose consecutive sentences exceeding that length under KRS 532.110(1)(c).

In dealing with *Eldridge v. Commonwealth*, the Court of Appeals held that it was limited to Trafficking in Controlled Substances convictions under KRS 218A.1413. 479 S.W.3d 614, 620 (Ky. App. 2015). The Court of Appeals also noted that *Eldridge* merely followed this Court's analysis in *Gamble v. Commonwealth*, 453 S.W.3d 716, 720-21 (Ky. 2015).

The Commonwealth sought discretionary review to answer this specific question: can consecutive sentences for Class D POCS crimes exceed an aggregate of three years? The Commonwealth argues KRS 218A.1415(2)(a) "does nothing to cap aggregate sentences at three years[.]" In brief, the essence of the Commonwealth's argument is "running two separate three-year sentences consecutively does not increase the sentence for any single possession conviction to more than three years." Amboree, of course, argues the Court of Appeals is correct and should be affirmed. Notably, his brief discusses the underlying legislative purpose of KRS 218A.1415, which was to move to a rehabilitative-oriented approach to drug possession crimes and, hopefully, relieve the Commonwealth's financial burden from what some may call over-incarceration of drug addicts. *See generally* Edward M. O'Brien, *Course Corrections: House Bill 463 and Reforming Kentucky's Broken Criminal Justice System Through Evidence-Based Reinvestment Strategies*, 51 U. Louisville L. Rev. 647 (2013).

We now address the merits of the appeal.

## II. Analysis

Our standard of review is *de novo. Gamble*, 453 S.W.3d at 718. "[T]he most logical method of discerning the General Assembly's intent is to look to the plain wording of the statute, assigning 'the words employed in the statute ... their ordinary meaning.'" *Id.* (quoting *Lynch v. Commonwealth*, 902 S.W.2d 813, 814 (Ky. 1995)). Indeed, it is the judiciary's

> duty to interpret and enforce a statute according to its plain-text meaning. *Barnett v. Central Kentucky Hauling, LLC*, 617 S.W.3d 339, 341 (Ky. 2021). "Only if the language is unclear do we consider the legislatures' unspoken intent, the statute's purpose, and the broader statutory scheme." *Id.* at 341-42. "Where the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as it is written." *Griffin v. City of Bowling Green*, 458 S.W.2d 456, 457 (Ky. 1970).

*Normandy Farm, LLC v. Kenneth McPeek Racing Stables, Inc.*, 701 S.W.3d 129, 137 (Ky. 2024).

The statute at issue here states, "Possession of a controlled substance in the first degree is a Class D felony subject to the following provisions: The maximum term of incarceration shall be no greater than three (3) years, notwithstanding KRS Chapter 532[.]" KRS 218A.1415(2)(a). The most significant comment heretofore made by this Court upon this language was in *Gamble*. In that case, the interpretation of KRS 218A.1413, Trafficking in a Controlled Substance, was at issue and the question was whether a conviction for trafficking could be enhanced beyond three years by the persistent felony offender statute. 453 S.W.3d at 719.

4

KRS 218A.1413(2)(b)1 states, "A Class D felony for the first offense, *except that KRS Chapter 532 to the contrary notwithstanding,* the maximum sentence to be imposed shall be no greater than three (3) years[.]" (emphasis added). We held,

> Despite the rather puzzling language, the General Assembly made it clear that the "sentence to be imposed shall be no greater that [sic] three (3) years." Therefore, the maximum penalty a sentencing court may bestow upon a first time offender of KRS 218A.1413(1)(c) is three years, despite the crime's Class D classification.

*Gamble*, 453 S.W.3d at 719. We then proceeded to discuss KRS 218A.1415, stating,

> Unlike the TICS2 statute, KRS 218A.1415 has much clearer language. The statute states that despite its classification as a Class D felony, first-degree possession of a controlled substance carries a "maximum term of incarceration [ ] no greater than three (3) years, *notwithstanding KRS Chapter 532."* (Emphasis added). The wording implies that *no* section of KRS Chapter 532 can increase the sentence beyond three years, including a PFO enhancement. In the TICS2 statute, however, the General Assembly used the phrase "Chapter 532 to the contrary notwithstanding", which leads this Court to believe that it meant something other than the entire Chapter of KRS 532 is inapplicable. Instead, what we believe the General Assembly meant is that that the sentencing court must ignore the contrary penalty range for Class D felonies as detailed in KRS 532.060(2)(d) specifically, but not the PFO provision.

*Id.* at 720-21.

While *Gamble*'s discussion of KRS 218A.1415 was technically dicta (the statute was not the one Gamble was convicted under), it was dicta with a purpose. We interpret statutes as a whole. *Cosby v. Commonwealth*, 147 S.W.3d 56, 58-59 (Ky. 2004). The contrast between the KRS 218A.1415(2)(a)

5

and KRS 218A.1413(2)(b)1 was a crucial pillar supporting the Court's conclusion. The two statutes had different phrasing and structure in spite of their superficial similarity, and this demanded a different interpretation between them. We, therefore, do not regard *Gamble*'s discussion as mere "surplusage" but instead "entitled to respect according to [its] reasoning and application[.]" *Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952).

This leads to the very purpose of this appeal. What exactly does "[t]he maximum term of incarceration shall be no greater than three (3) years, notwithstanding KRS Chapter 532" mean? We conclude the language is unambiguous. Incarceration is synonymous with imprisonment and "maximum term of incarceration" means nothing other than maximum period of imprisonment. "No greater than three years" is also unambiguous in its meaning. The sentence then concludes with "notwithstanding KRS Chapter 532." This phrase is equally unambiguous. It makes no distinction between different parts of KRS Chapter 532. It does not say KRS 532.080, nor KRS 532.060(2)(d), nor KRS 532.110(1)(c). It says "notwithstanding KRS Chapter 532" which can only mean "the entire Chapter of KRS 532 is inapplicable" if it would make the term of incarceration longer than three years. *Gamble*, 453 S.W.3d at 721.

This interpretation is demanded by the word "notwithstanding." "[T]he U.S. Supreme Court defines *notwithstanding* to mean 'in spite of' or 'without prevention or obstruction from or by.'" *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 791 (Ky. 2019) (quoting *N.L.R.B. v. SW Gen., Inc.*,

6

580 U.S. 288, 301 (2017)). It is well-recognized that when the General Assembly uses the word "notwithstanding" it is "a fail-safe way to ensuring the clause it introduces will absolutely, positively prevail." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 128 (2012). When there is a conflict between statutes, the word "notwithstanding" has only one purpose: "the provision to which [it] accords priority prevails." *Id.*

As *Gamble* contrasted KRS 218A.1415(2)(a) to explain its interpretation of KRS 218A.1413(2)(b)1, so the reverse is illustrative.[2] The latter statute reads, "A Class D felony for the first offense, except that KRS Chapter 532 to the contrary notwithstanding, the maximum sentence to be imposed shall be no greater than three (3) years[.]" "A Class D felony" is a noun phrase with the adverbial modifier "first offense[.]" The comma then introduces the exceptive clause "KRS Chapter 532 to the contrary notwithstanding," creating a subordinating conjunction that is followed by the content clause: "the maximum sentence to be imposed shall be no greater than three (3) years[.]" *Gamble* correctly concluded the sentence structure indicated that the entirety of KRS Chapter 532 was not excluded from application but only the penalty range found in KRS 532.060(2)(d). *Gamble*, 453 S.W.3d at 721.

The different structure in KRS 218A.1415(2)(a) leads to a different interpretation. "The maximum term of incarceration shall be no greater than

---

[2] "'[S]entences are to be construed according to the rules of grammar, and from this presumption it is not permissible to depart,' unless it should lead to an absurd result." *Cab. for Health and Family Serv. v. D.W.*, 680 S.W.3d 856, 861 (Ky. 2023) (quoting *Gilbert v. Greene*, 216 S.W. 105, 108 (Ky. 1919)).

three (3) years," is an appositive clause introduced by the "following provisions" language found in KRS 218A.1415(2). It is followed by "notwithstanding KRS Chapter 532[,]" which is an adverbial modifier. While the sentence could be read as substantively no different than that found in KRS 218A.1413(2)(b)1— *i.e.,* both only exclude the sentencing range of KRS 532.060—*Gamble* rejected that interpretation outright. "The wording implies that *no* section of KRS Chapter 532 can increase the sentence beyond three years, including a PFO enhancement." *Gamble,* 453 S.W.3d at 721. We see no reason to alter this understanding. It is the natural reading of the text and, secondly, the statutory language remains unchanged since *Gamble.*

Whereas *Gamble* was concerned with PFO enhancements, and, therefore, specifically mentioned it, we are now concerned with aggregate consecutive sentences. KRS 218A.1413(2)(b)1's structure and phrasing creates a discrete exception to KRS Chapter 532; KRS 218A.1415(2)(a)'s structure and phrasing creates an absolute exception that applies to KRS Chapter 532 in its entirety if it would extend the term of incarceration beyond three years. Our interpretation is nothing more than a reaffirmation of *Gamble,* and an extension of its reasoning to an issue it had no need to address.[3]

---

[3] Accordingly, we see no need to wrestle with *Eldridge v. Commonwealth* as the Court of Appeals correctly understood that case; it did nothing but apply *Gamble* as the controlling decision. 479 S.W.3d 614, 615 (Ky. App. 2015) ("Because the Supreme Court of Kentucky's recent decision in *Commonwealth v. Gamble,* 453 S.W.3d 716 (Ky. 2015), supports the circuit court's decision to run the sentences consecutively, we affirm."); *see also Id.* at 620 ("In *Gamble,* the Supreme Court specifically reversed this Court's holding that KRS 218A.1413(2)(b) was not subject to PFO enhancement, which is the basis of Eldridge's argument in the present appeal.").

The Commonwealth is of course happy to concede Amboree's convictions could not be enhanced by the PFO statute. It argues that the theoretical limit provided by the PFO statute is, however, still applicable to the class of crime Amboree was convicted of. The dissent also relies on a difference between enhancing a sentence via PFO and aggregating multiple sentences via consecutive sentencing. We agree there is a difference, but both the Commonwealth and the dissent sidestep the more basic inquiry: where is the authority for the trial court to aggregate multiple sentences consecutively found? It is found in KRS 532.110(1). Where does the theoretical limit the Commonwealth argues for ultimately rest? It rests in KRS 532.110(1)(c). Both are creatures of KRS Chapter 532. KRS 218A.1415(2)(a) makes no distinction between sentence enhancements and aggregating sentences. It states generally that "the maximum term of incarceration *shall be no greater than* three years *notwithstanding* KRS Chapter 532." (Emphasis added). Aggregating Amboree's sentences consecutively makes his term of incarceration greater—it goes from three years to six years. There is no escaping the "notwithstanding KRS Chapter 532" language. That statute cannot apply, in whole or in part, if applying it would make the term of incarceration greater than three years. We simply will not read "notwithstanding KRS Chapter 532" to mean "notwithstanding KRS Chapter 532 *except for KRS 532.110(1)(c)*" as the Commonwealth essentially implores us to do.

We might be accused of threatening the entire scheme of concurrent or consecutive sentencing with this rationale given the similar language of KRS

9

532.060(2) regarding maximum sentencing lengths. That would mistake the significance of the "notwithstanding KRS Chapter 532" language. At the risk of stating the obvious, KRS 532.060 does not contain such a phrase. In fact, the phrase occurs only two other times in our statutes, KRS 506.010(5) and KRS 507.070(3), both involving murder or attempted murder of a first responder. In both statutes the phrase begins the relevant subsection, and the subsequent language makes clear that its exception only serves to establish alternative mandatory minimum sentences. In KRS 218A.1415(2)(a), however, the phrase occurs at the end of a sentence and there is no subsequent modifying language. To put an even finer point on it, the language of KRS 218A.1415(2)(a) is unique in our statutes. Even its counterparts in KRS Chapter 218A instead mimic the language of KRS 218A.1314(2)(b)1.[4] There is no justifiable reason to believe our decision in this case will have any impact beyond the scope of KRS 218A.1415(2)(a).

In brief, there is no authority for a trial court to impose consecutive sentences for multiple convictions of POCS, first degree under KRS 218A.1415 if doing so extends the term of incarceration beyond three years. That may shock some people who consider the power to order consecutive or concurrent sentences basic to the judiciary.[5] It may displease those in our criminal justice

---

[4] *See* KRS 218A.1414(2)(b)2; KRS 218A.1422(2); and KRS 218A.1451(2).

[5] And for what it is worth, the common law provided "judges with little sentencing discretion[.]" *Alleyne v. United States*, 570 U.S. 99, 108 (2013). "[O]nce the facts of the offense were determined by the jury, the 'judge was meant simply to impose the prescribed sentence.'" *Id.* (quoting Langbein, The English Criminal Trial

system who believe in a "tough on crime" approach. It might strike some as altogether anomalous that POCS, first degree convictions should not be eligible for consecutive sentencing beyond three years. Despite these concerns, and the several others which learned men might bring to bear, "in the absence of doubt and ambiguity, [we] will uphold and enforce the statute as written." *McGlone v. Horton*, 80 S.W.2d 522, 524-25 (Ky. 1935).

If KRS 218A.1415(2)(a) were "ambiguous, we could consider an interpretation that takes the apparent anomaly into account." *Commonwealth v. Moore*, 545 S.W.3d 848, 852 (Ky. 2018). We discern no ambiguity. "[T]he power to define crimes and assign their penalties belongs to the legislative department[.]" *McClanahan v. Commonwealth,* 308 S.W.3d 694, 700 (Ky. 2010) (quoting *Hoskins v. Maricle,* 150 S.W.3d 1, 11 (Ky. 2004)). "[T]he appropriate range for the length of sentence is determined 'purely [as] a matter of legislative prerogative.'" *Hampton v. Commonwealth,* 666 S.W.2d 737, 741 (Ky. 1984) (quoting *Rummel v. Estelle*, 445 U.S. 263, 274 (1980)). Our decision does nothing more than read an unambiguous statute with the assumption "that the Legislature meant exactly what it said, and said exactly what it meant." *Moore*, 545 S.W.3d at 851 (quoting *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017)).

---

Jury on the Eve of the French Revolution, in The Trial Jury in England, France, Germany 1700–1900, p. 36-37 (A. Schioppa ed. 1987)).

11

Finally, even if our construction of the statute prohibiting consecutive sentences for multiple POCS, first degree offenses beyond three years can be said to sanction an anomalous result, that is not a reason to ignore the plain text reading. "We cannot presume this differential treatment is unintended[.]" *Id.* at 852. This is true even if we believed the result was "most likely an unforeseen consequence" of the General Assembly's drafting. *Id.* Only when the plain text reading leads to an absurdity is a court authorized to depart from the text. An absurdity "does not mean an odd result but a result so unreasonable that the legislature could not have intended it." *Lee v. Kentucky Dep't of Corr.*, 610 S.W.3d 254, 262 (Ky. 2020). Indeed, the absurdity must be of such a magnitude "that it cannot possibly be reasonable." *Owen v. Univ. of Ky.*, 486 S.W.3d 266, 273 n.30 (Ky. 2016). Prohibiting consecutive sentences for multiple POCS, first degree convictions beyond three years does not defy reason. It is a decision firmly within the General Assembly's authority to set penalties and define the lengths of sentences. Whether this Court agrees with the wisdom of that decision is immaterial. If the General Assembly believes we have misinterpreted the statute it has only to amend it and clarify its intent.

### III. Conclusion

The General Assembly has unambiguously declared that for POCS, first degree convictions under KRS 218A.1415(2)(a), the term of incarceration shall be no greater than three years notwithstanding any provision in KRS Chapter 532 that might make it greater. Aggregating Amboree's two sentences for POCS, first degree and ordering them to be served consecutively pursuant to

12

KRS 532.110(1) makes the term of incarceration greater than three years and violates the statute. We affirm the Court of Appeals in vacating Amboree's sentence and remand to the Henderson Circuit Court for resentencing.

All sitting. Lambert, C.J.; Goodwine, and Thompson, JJ., concur. Nickell, J., dissents by separate opinion which Bisig and Keller, JJ., join.

NICKELL, J., DISSENTING:  Respectfully, I dissent.  In my estimation, the operative phrase, "maximum term of incarceration," as used in KRS 218A.1415(2)(a), simply refers to the maximum term of incarceration for a single conviction and does not speak to the maximum length of multiple consecutive sentences.  If the legislature had intended to limit the maximum length of multiple sentences for first-degree possession of a controlled substance to three years' imprisonment, it would have used the technical legal phrase, "aggregate of consecutive indeterminate terms" to except KRS 218A.1415(2)(a) from the general statute on consecutive sentencing, KRS 532.110(1)(c).  Therefore, I would hold that KRS 218A.1415(2)(a) does not limit the maximum aggregate length of consecutive sentences to three years' imprisonment and would reverse and remand the decision of the Court of Appeals with directions to reinstate the judgment and sentence imposed by the trial court.

A plain language reading of a statute does not require a court to ignore the legal context.  *Dunn v. Solomon Foundation*, 723 S.W.3d 711, 724 (Ky. 2025) (interpreting constitutional provisions).  Particularly, words and phrases which have acquired a technical legal meaning should be accorded that

13

meaning. *Commonwealth v. Wombles*, 346 S.W.2d 299, 301 (Ky. 1961). Stated differently, "[i]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73 (2012) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). Moreover, courts are not at liberty to expand the scope of a statute "beyond its fair import" through the addition of words by interpretation or implication. *G.G. v. Cabinet for Health & Fam. Servs.*, 718 S.W.3d 715, 722 (Nickell, J., dissenting) (quoting *Hatchett v. City of Glasgow*, 340 S.W.2d 248, 251 (Ky. 1960)).

To properly contextualize the specific "notwithstanding KRS Chapter 532" exception contained in KRS 218A.1415(2)(b), it is necessary to examine the general structure of criminal sentencing relative to the interplay between KRS Chapter 532 and those offenses defined outside the Penal Code. KRS 532.005 states, *without exception*, "KRS Chapters 532, 533 and 534 apply to all classes of crimes committed outside the provisions of the Penal Code." For the purpose of sentencing, KRS 532.010 classifies felony offenses into five categories: "(1) Capital offenses; (2) Class A felonies; (3) Class B felonies; (4) Class C felonies; and (5) Class D felonies."

KRS 532.020 designates non-Penal Code offenses consistently with the classification of felony offenses under KRS 532.010 and the maximum terms of imprisonment authorized under KRS 532.060. KRS 532.020(1)(a) specifically provides:

(1) *Any offense* defined outside this code for which a law outside this code provides *a sentence to a term of imprisonment* in the state for:

(a) At least one (1) but not more than five (5) years shall be deemed *a Class D felony*[.]

(Emphasis added).

KRS 532.060 governs "the authorized maximum terms of imprisonment for" each class of felony. Specifically, KRS 532.060(2)(d) provides, "[f]or a Class D felony," the maximum term of imprisonment is "not less than one (1) year nor more than five (5) years." Notably, the maximum term of imprisonment for a single conviction for each class of felony under KRS 532.060(2) is subject to the exception, "[u]nless otherwise provided by law[.]"

Tracking the language of KRS 532.060(2)(d), KRS 218A.1415(2)(a) establishes an exception to the maximum term of imprisonment for a single conviction of a Class D Felony and states in pertinent part as follows:

(2) Possession of a controlled substance in the first degree is *a Class D felony* subject to the following provisions:

(a) The *maximum term of incarceration* shall be no greater than three (3) years, notwithstanding KRS Chapter 532[.]

(Emphases added).

By contrast, general statutory limitations on the maximum length of consecutive sentences do not refer to a "maximum term of incarceration" or imprisonment. The legislature has specifically used the technical phrase "the aggregate of consecutive indeterminate terms" when referring to the imposition of multiple consecutive felony sentences. KRS 532.110(1)(c). Moreover, the formula for determining the maximum aggregate of consecutive sentences

15

under KRS 532.110(1)(c) does not depend on the range of years used to ascertain the maximum term of imprisonment for a single conviction under KRS 532.060(2)(d). In addition, the consecutive sentencing provisions of KRS 532.110(1)(c) do not contain any exception comparable to the "[u]nless otherwise provided by law" language employed by KRS 532.060 in connection with the maximum term of imprisonment for a single conviction.

Properly understood in context, the technical legal phrases, "maximum term of incarceration" as used in KRS 218A.1415(2)(a), and "aggregate of consecutive indeterminate sentences" as used in KRS 532.110(1)(c), are not interchangeable. The three-year "maximum term of incarceration" contained in KRS 218A.1415(2)(a) clearly refers to the punishment for a single conviction. Thus, the phrase "notwithstanding KRS Chapter 532," merely qualifies the three-year "maximum term of incarceration" to differentiate the three-year maximum term for a single conviction under KRS 218A.1415(2)(a) from the five-year maximum term for a single conviction under KRS 532.060(2)(d). If the legislature had intended to limit the maximum length of multiple sentences under KRS 218A.1415(2)(a), it would have stated that the maximum aggregate of consecutive sentences shall not exceed three years of imprisonment. By conflating the technical terms "maximum term of incarceration" and "aggregate of consecutive sentences," the majority has ignored the pertinent legal context of KRS 218A.1415(2)(a) and inappropriately expanded the scope of the exception contained therein. Because such a result does not comport with the statutory text and sound principles of interpretation, I respectfully dissent

and would reverse and remand the decision of the Court of Appeals with directions to reinstate the judgment and sentence imposed by the trial court.

Bisig and Keller, JJ., join.

COUNSEL FOR APPELLANT:

Russell M. Coleman
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General

COUNSEL FOR APPELLEE:

Molly Mattingly
Kathleen K. Schmidt
Assistant Public Advocates