RENDERED:  AUGUST 28, 2020; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000890-MR

ALEXANDER BLOYER            APPELLANT

v.        APPEAL FROM HART CIRCUIT COURT
HONORABLE JOHN DAVID SEAY, JUDGE
ACTION NO. 14-CR-00078

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  A youthful offender, a minor prosecuted and sentenced in

circuit court as an adult, must be brought back to his/her sentencing court upon

turning eighteen.  Kentucky Revised Statute (KRS) 640.030(2) requires the court

to then conduct a hearing (which we shall call the age-eighteen hearing), after

which the court typically either grants the youthful offender probation or transfers

the offender from the custody of the Department of Juvenile Justice (DJJ) to the Department of Corrections (Corrections).  Although youthful offenders not granted probation at their age-eighteen hearing are usually immediately transferred from DJJ to Corrections, KRS 640.075(1) lets DJJ and Corrections agree to let a youthful offender denied probation at an age-eighteen hearing remain with DJJ until turning twenty-one.  Such youthful offenders are permitted to seek "reconsideration of probation" later under KRS 640.075(4).

Meanwhile, KRS 532.045(2) bars probation for some persons convicted of sex crimes.  Kentucky precedent plainly holds that youthful offenders who satisfy the criteria of KRS 532.045(2) may not be granted probation at an age-eighteen hearing, even though KRS 640.030 lists probation as a dispositional alternative at those hearings.  *Commonwealth v. Taylor*, 945 S.W.2d 420, 422-23 (Ky. 1997).

The matter of first impression before us is whether a  youthful offender who was ineligible for probation at his age-eighteen hearing via application of KRS 532.045(2) and *Taylor* remained ineligible for probation when he later filed a motion for probation reconsideration under KRS 640.075(4).  We conclude the answer is "yes" because a person who meets the requirements of KRS 532.045(2) is *always* ineligible for probation.  Therefore, we affirm the trial court's

denial of Alexander Bloyer's KRS 640.075(4) motion for reconsideration of probation.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

The facts underlying Bloyer's convictions are largely irrelevant to the question before us, so we need only note that he was charged with numerous sex offenses and transferred to the Hart Circuit Court as a youthful offender.[1] In May 2014, a then-sixteen-year-old Bloyer was indicted in circuit court for, among other

---

[1] A youthful offender is unhelpfully defined in KRS 600.020(72) as "any person regardless of age, transferred to Circuit Court under the provisions of KRS Chapter 635 or 640 and who is subsequently convicted in Circuit Court." A more comprehensive explanation of what it means to be a "youthful offender" has been explained by our Supreme Court as follows:

> At common law, through the present day, Kentucky has recognized that children should not be held to the same standard as adults. However, as modern society saw a rise in more heinous crimes being committed by children, concerns about punishment and setting an example soon followed. Consequently, the legislature enacted exceptions to the Juvenile Code by creating a class of offenders known as "youthful offenders," who are children that are prosecuted and sentenced as if they were adults. Yet, being mindful of the traditional reluctance to treat children as adults, the legislature set a high bar for children to be deemed youthful offenders.
>
> Thus, under the statutory scheme, KRS 635.010-.120 & 640.010-.120, two steps are required before a child will be sentenced as a youthful offender. First, the child must qualify for transfer to circuit court and prosecution as a youthful offender by falling under one of the youthful offender provisions in KRS 635.020(2)-(7). Then, upon conviction in the circuit court, the child may be sentenced as a youthful offender only if he is not "exempt" under KRS 640.040(4). This means that the child's ultimate conviction must continue to qualify him as a youthful offender under one of the provisions in KRS 635.020(2)-(7). *See Canter v. Commonwealth*, 843 S.W.2d 330, 331-32 (Ky. 1992). As a result, to be properly sentenced as an adult, a child must qualify as a youthful offender both for prosecution and for sentencing. *Id.*

*Chipman v. Commonwealth*, 313 S.W.3d 95, 97 (Ky. 2010).

offenses, having committed incest with his minor sibling victims. Pursuant to his guilty plea, Bloyer was convicted of numerous sex crimes, including six counts of incest. Bloyer was sentenced in January 2015 to a total of fifteen years' imprisonment and committed to DJJ.

Soon before his eighteenth birthday, when KRS 640.030(2) required the sentencing court to hold an age-eighteen hearing, Bloyer filed a motion for probation. Though styled as a motion for probation, its main emphasis was a request for Bloyer to remain under the care of DJJ until he turned twenty-one.[2] But the only way that Bloyer could remain under the care of DJJ until he turned twenty-one was by agreement of DJJ and Corrections, not via the agreement or directive of the trial court. And the only way that agreement between DJJ and

---

[2] KRS 640.075 provides in relevant part:

> (1) Any other provision of KRS Chapter 640 to the contrary notwithstanding, *any youthful offender ordered transferred to the Department of Corrections under KRS 640.030(2)(c)* [*i.e.*, after the age-eighteen hearing] may, at the discretion of the Department of Juvenile Justice, after consultation with the Department of Corrections, remain in the custody of the Department of Juvenile Justice and in a Department of Juvenile Justice facility or program, until expiration of sentence or until the youthful offender is released on parole, but in no event past the age of twenty-one (21).
>
> . . .
>
> (4) Any youthful offender whose custody has been retained under subsection (1) of this section . . . may, on one (1) occasion and after the completion of a minimum twelve (12) months additional service of sentence, petition the sentencing Circuit Court for reconsideration of probation . . . .

(Emphasis added).

Corrections could come to fruition under the plain language of KRS 640.075(1) was for the trial court to deny Bloyer probation and commit him to the custody of Corrections after conducting the age-eighteen hearing mandated by KRS 640.030.

In short, perhaps unintentionally, Bloyer's request to remain with DJJ until he turned twenty-one implicitly included a request to be denied probation and transferred to Corrections after the age-eighteen hearing. Unfortunately, those predicates were not explicitly discussed in Bloyer's motion or at the roughly fifteen-minute August 2016 age-eighteen hearing, at which no testimony was presented.

During that hearing, the Commonwealth objected to Bloyer receiving probation (though it did not contest his eligibility therefor) but did not object to Bloyer remaining with the Department of Juvenile Justice until he turned twenty-one. Bloyer's counsel orally stated Bloyer was not seeking probation because there was "no place for him to go." No party discussed whether Bloyer was ineligible for probation under *Taylor*.

The trial court orally stated it believed it was appropriate for Bloyer to continue to receive treatment from DJJ until he turned twenty-one and set the matter for an "adult sentencing" near Bloyer's twenty-first birthday. The trial court did not explicitly state that it was denying probation for Bloyer or that it was committing him to the care of Corrections, even though KRS 640.075(1)

-5-

conditions a youthful offender remaining with DJJ until turning twenty-one on the offender having been "ordered transferred to the Department of Corrections under KRS 640.030(2)(c)[,]" which only occurs after an age-eighteen hearing is held. Moreover, the purported function that age-twenty-one hearing was designed to fulfill is unclear. KRS 640.075(3) provides that a youthful offender who "attains the age of twenty-one (21) while in the custody of the [DJJ] shall be immediately transferred to the Department of Corrections . . . ." Consequently, there was no blanket need to conduct another "adult sentencing" once Bloyer turned twenty-one.

Disturbingly, the parties have not cited, nor have we independently located, a written order reflecting the court's rulings. But Bloyer was permitted to remain with DJJ, so we must conclude the August 2016 hearing was the age-eighteen hearing mandated by KRS 640.030(2), and must extrapolate further that the trial court implicitly denied probation for Bloyer and committed him to Corrections, because Bloyer had to: a) have an age-eighteen hearing, b) be denied probation, and c) sent to Corrections for KRS 640.075(1) to permit him to remain with DJJ until turning twenty-one.

In February 2019, when his twenty-first birthday was nigh, Bloyer filed a motion for probation reconsideration under KRS 640.075(4). The trial court patiently held a lengthy hearing on Bloyer's motion in March 2019, at which several witnesses testified. During its closing argument, the Commonwealth

-6-

conceded that Bloyer was eligible for probation but adamantly urged the court to instead commit him to Corrections.

A couple of weeks after the hearing, the trial court issued an order finding that Bloyer was ineligible for probation, notwithstanding the Commonwealth's statement at the hearing. Under the trial court's analysis, because Bloyer was convicted of, *inter alia*, incest and was a relative of/member of the same household as a victim under the age of fourteen, he occupied a position of special trust toward his victim(s) which rendered him ineligible for probation under KRS 532.045(2). The court's order did not cite KRS 640.075.

Bloyer filed a motion to reconsider pursuant to Kentucky Rules of Civil Procedure (CR) 52.02 and 59.05, arguing for the first time that the trial court's decision violated various constitutional provisions, including the Eighth Amendment to the United States Constitution. After hearing oral argument by counsel, the trial court denied the motion for reconsideration via a simple notation on a docket sheet in May 2019. Bloyer then filed this appeal.

## ANALYSIS

### A. Bloyer's Improper Notice of Appeal

Though not raised by the parties, we must first determine whether we have jurisdiction to consider Bloyer's appeal because his notice of appeal states that he appeals only from the trial court's docket notation denying his motion to

vacate.  *See*, *e.g.*, *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 101 (Ky. App. 2011) (holding that this Court must sometimes raise jurisdictional issues on its own volition).  An order denying a CR 59.05 motion to reconsider is not a final and appealable order or judgment which provides a proper basis for an appeal.  *Id.* at 103, n.5.  However, if "a party erroneously designates an order denying CR 59.05 relief as the order from which the appeal is taken, this Court applies a substantial compliance analysis . . . and, under circumstances void of prejudice, considers the appeal properly taken from the final judgment that was the subject of the CR 59.05 motion."  *Id.* (citing *Lassiter v. American Exp. Travel Related Services Co., Inc.*, 308 S.W.3d 714, 718 (Ky. 2010)).  Considering this appeal on the merits would cause no obvious prejudice to the Commonwealth, given that it briefed the matter without raising the deficiency.  Accordingly, we will apply the doctrine of substantial compliance and deem the appeal to have been taken from the order denying Bloyer's motion for probation (which no one has alleged is not a final and appealable order).

**B.  Bloyer's Childhood and IQ Scores Do Not Help Answer the Narrow Issue Before Us**

Before we begin our substantive legal analysis, we note that Bloyer devotes a significant portion of his brief to non-legal matters such as his unfortunate childhood, which includes his being born in Russia, abandoned by his

biological parents, and living at a Dickensian-type orphanage before being adopted by an American couple as a toddler. Bloyer also discusses his relatively low IQ. We do not dispute that Bloyer's early childhood could have caused psychological trauma, nor do we dispute that Bloyer's IQ is below average. However, Bloyer has been found competent and the circumstances of his early childhood do not provide a legal excuse for his criminal behavior. In short, though we are not unsympathetic, neither Bloyer's early childhood nor his IQ is germane to his probation eligibility.

### C. The Proper Issue Before Us and the Standard of Review

As can be seen from our intentionally thorough recitation of this case's procedural history, the proper question is not, despite what the trial court and perhaps the parties seem to believe, whether Bloyer is eligible for probation under KRS 640.030(2). That question was the issue at his age-eighteen hearing, with the answer of "no" being mandated by *Taylor*. Instead, the proper question now is whether Bloyer is eligible for probation via his motion to "reconsider probation" under KRS 640.075(4). *Taylor* did not address that specific question, though its rationale helps answer it. Because the issue before us is entirely one of statutory construction and interpretation, our review is *de novo*. *R.T. v. Commonwealth*, 583 S.W.3d 1, 4 (Ky. App. 2018).

**D.** *Taylor*

Though the narrow issue before us is a matter of apparent first impression, it is closely related to the facts and issues involved in *Taylor*, *supra*. In that matter, Taylor was a youthful offender convicted of sodomy in the first degree and sexual abuse in the first degree against victims who were his younger sisters. At Taylor's formal sentencing the trial judge declared him to be a "juvenile sexual offender" and committed him to the Cabinet for Human Resources until his twenty-first birthday. Taylor was ordered to be returned to the sentencing court pursuant to KRS 635.515(1) when he reached the age of twenty-one and, upon the appeal of his being granted probation at that time, the Supreme Court held that Taylor was barred from consideration for probation pursuant to KRS 532.045(2). Because of the detailed analysis, we quote at length from *Taylor*:

> The Commonwealth argues that Tommy is barred from probation by KRS 532.045(2) which provides as follows:

> Notwithstanding other provisions of applicable law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provision of this section be stricken for a person convicted of violating KRS 510.040, 510.050, *510.070,* 510.080, 529.030 to 529.050, 529.070, 530.020, 531.310, 531.320, 531.370, or criminal attempt to commit any of these offenses under KRS

-10-

506.010, and, who meets one (1) or more of the following criteria:

. . . .

(h) A person who in committing any of the offenses enumerated in this subsection has substantial sexual conduct with a *minor under the age of fourteen (14) years;* or (i) A person who occupies a *position of special trust* and commits an act of substantial sexual conduct.

(Emphasis added).

"Position of special trust" is defined in KRS 532.045(1)(b) as a position occupied by a person in a "position of authority" which is defined in (1)(a) as, *inter alia*, a relative or household member. Consequently, the Commonwealth argues, Tommy is barred from probation because: (1) he is a relative of the victim; (2) he is a member of the same household; and (3) the victim was under the age of fourteen (14) years.

The Commonwealth also argues that while KRS 640.040 exempts youthful offenders from the limitations of KRS 532.080 (persistent felony offender sentencing) and KRS 533.060 (use of firearms, commission of felonies while on probation, parole, awaiting trial, etc.), it does not exempt the youthful offender from the above provisions of KRS 532.045.

. . . .

Tommy next argues that "the juvenile sexual offender statute does not prohibit probation and KRS 532.045(2) does not apply." He bases this assertion on the proposition that KRS 532.045 applies only to *adult* defendants from a selective reference to the term "*adult* role model" contained in *Owsley v. Commonwealth*, Ky.

-11-

App., 743 S.W.2d 408, 410 (1988). We are not persuaded by Tommy's interpretation and note that the persons referred to in the statute as occupying a "position of special trust," according to *Owsley*, "include relatives, teachers, coaches, counsellors and others." Tommy fits the class.

Tommy also argues that he is exempt from the prohibition of probation contained in KRS 532.045(2) due to his status as a youthful offender. However, as the Commonwealth correctly asserts, KRS 640.030 makes the prohibition applicable. At the time of Tommy's sentencing, that statute provided in pertinent part as follows:

> **640.030 Sentencing after conviction or plea of guilty**
>
> A *youthful offender*, if he is convicted of, or pleads guilty to, a felony offense in Circuit Court, *shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult* convicted of a felony offense, except that:
>
> . . . .
>
> (4) A youthful offender who is a sexual offender as defined by KRS 197.410(1) shall be provided a sexual offender treatment program as mandated by KRS 439.340(10) by the cabinet for human resources pursuant to KRS 635.500 if the youthful offender has not been transferred to the Department of Corrections pursuant to KRS 640.070.

(Emphasis added).

-12-

Tommy contends that "sentencing procedures" do not equate to prohibitions of probation. We believe this argument to be without merit and contrary to the specific language of the statute which mandates that the youthful offender, after conviction of a felony in circuit court, shall be subject to the same sentencing procedures as an adult, including probation. The fact that the trial judge remanded Tommy to a sexual offender treatment program as mandated by KRS 439.340(10) by the Cabinet for Human Resources was merely compliance with KRS 640.030(4) as set out above.

Finally, we find Tommy's argument that the legislature "made a simple mistake" by failing in KRS 640.040(3) to except youthful offenders from the prohibitions of KRS 532.045 to be disingenuous. KRS 640.040 is a clear legislative pronouncement that youthful offenders shall not be subject to certain dispositions. To suggest that this Court rewrite the statute to include a matter not contained therein is contrary to longstanding precedent. As the Court stated in *Hatchett v. City of Glasgow*, Ky., 340 S.W.2d 248 (1960):

> The courts may supply clerical or grammatical omissions in obscure phrases or language of a statute in order to give effect to the intention of the Legislature, presumed or ascertainable from the context, or to rescue the act from an absurdity. *City of Owensboro v. Noffsinger*, Ky., 280 S.W.2d 517. But where a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus,* or cure an omission, however just or desirable it might be to supply an omitted provision. It makes no difference that it appears the

-13-

> omission was mere oversight. (Citations omitted).

> *Hatchett*, 340 S.W.2d at 251.

> We hold that the appellee was barred from consideration for probation pursuant to KRS 532.045(2). Consequently, we reverse the judgment of the Fayette Circuit Court and remand this action for proceedings consistent with this opinion.

*Taylor*, 945 S.W.2d at 421-23 (footnote omitted).

First, *Taylor* plainly dooms Bloyer's argument that, as a minor, he cannot be deemed to have held a position of special trust regarding his victims. *Taylor* flatly rejects an indistinguishable argument, *id.* at 422-23, and the General Assembly has not amended the definition of "position of special trust" in KRS 532.045 to reflect disagreement with *Taylor*, which leads to a "strong implication" that the legislature agreed with that decision. *Rye v. Weasel*, 934 S.W.2d 257, 262 (Ky. 1996) ("The Kentucky and Federal courts have recognized the failure of the legislature to change a known judicial interpretation of a statute as extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted.").

Second, *Taylor* forecloses Bloyer's argument that KRS 640.040 must be read expansively to provide maximum opportunities for lenient, ameliorative sentencing for youthful offenders. Bloyer's argument is, at its core, an argument

-14-

that the public policy of Kentucky should be to treat minors who commit sexual offenses less harshly than adults. Toward that end, Bloyer cites scientific principles and literature which essentially denote developmental and psychological differences between minors and adults. We do not dispute those general scientific principles. But Bloyer's argument is contrary to both KRS 640.040 and *Taylor*.

KRS 640.040 treats youthful offenders more leniently than adults in many respects, such as exempting them from being sentenced as a persistent felony offender. But KRS 640.040 does not contain *any* language exempting youthful offenders from the probation ineligibility dictate of KRS 532.045. Our role as judges is to interpret, not make, public policy. And we cannot judicially graft language onto a statute, even if we believe our judicially crafted statute would reflect better public policy. *Jones v. Commonwealth*, 279 S.W.3d 522, 526 (Ky. 2009); *Leadingham ex rel. Smith v. Smith*, 56 S.W.3d 420, 428-29 (Ky. App. 2001). Therefore, we cannot add language to KRS 640.040 or 640.075(4) exempting Bloyer or similarly situated youthful offenders from the mandatory probation bar contained in KRS 532.045(2).

Second, the General Assembly expressed an unmistakable intent for KRS 532.045 to control over any other statutes, including KRS 640.040, when it inserted language in subsection two mandating that KRS 532.045 applies "[n]otwithstanding other provisions of applicable law . . . ." As the United States

-15-

Supreme Court has explained, "[t]he ordinary meaning of notwithstanding is in spite of, or without prevention or obstruction from or by. . . . *In statutes, the word shows which provision prevails in the event of a clash.*" *N.L.R.B. v. SW General, Inc.*, ___ U.S. ___, 137 S. Ct. 929, 939, 197 L. Ed. 2d 263 (2017) (emphasis added) (internal quotation marks and citations omitted). *See also Abel v. Austin*, 411 S.W.3d 728, 738 (Ky. 2013) (holding that a statute containing a similar "notwithstanding" clause "plainly evinces a legislative intent to rule out the application of other statutes of limitations"). Therefore, KRS 532.045(2) controls over any other statutes which might otherwise have afforded Bloyer an opportunity to be granted probation, such as KRS 640.030 or 640.075. In short, we decline Bloyer's implicit invitation to overrule by judicial fiat the public policy against probating certain sexual offenders plainly expressed by the General Assembly in KRS 532.045.

In addition, Bloyer's argument is, at its core, the same argument emphatically rejected by our Supreme Court in *Taylor*. In *Taylor*, the Court deemed "disingenuous" and "contrary to longstanding precedent" Taylor's argument that the General Assembly "made a simple mistake" by not exempting youthful offenders from the probation ineligibility mandate of KRS 532.045. *Taylor*, 945 S.W.2d at 423. We similarly conclude the General Assembly did not make a drafting mistake by not stating in KRS 640.075(4) that youthful offenders

-16-

seeking probation reconsideration are eligible for probation, regardless of the otherwise applicable probation bar found in KRS 532.045(2). In fact, such a conclusion would be illogical in that it would entitle a youthful offender filing a motion for probation reconsideration the right to probation eligibility even though, under *Taylor*, a youthful offender satisfying the KRS 532.045 criteria would not be initially eligible for probation at an age-eighteen hearing.

A court cannot reconsider granting relief which it could not initially consider. In short, because Bloyer was ineligible for probation at his age-eighteen hearing, he remained ineligible for probation when he sought reconsideration under KRS 640.075(4).

### E. *Taylor* Is Still Viable

Seemingly cognizant of how his basic position contravenes *Taylor*, Bloyer contends *Taylor* should no longer be followed because it has been overruled *sub silentio* and/or superseded by more recent juvenile law decisions, principally *Commonwealth v. Merriman*, 265 S.W.3d 196 (Ky. 2008), and *Britt v. Commonwealth*, 965 S.W.2d 147 (Ky. 1998). We disagree.

First, we harbor grave doubts that our Supreme Court would have overruled silently a significant case in our state's juvenile law jurisprudence. As our Supreme Court noted when rejecting a similar argument regarding precedent of the United States Supreme Court: "If the Supreme Court had intended such a

-17-

major departure from its recent precedent it would have said so expressly and not left it to implication." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 746 (Ky. 2009) (footnote omitted). Second, as our Supreme Court has not explicitly overruled *Taylor*, we are "bound" to "follow" it under Supreme Court Rule (SCR) 1.030(8)(a). Nonetheless, we will analyze *Merriman* and *Britt* to see if they support Bloyer's contentions. As will be seen, neither does.

## 1. *Merriman*

*Merriman* involved whether the Violent Offender Statute, KRS 439.3401, applied to youthful offenders. That question has nothing facially to do with any issues at hand. Bloyer makes much of the expansive language in *Merriman* that "KRS 640.030 is in its entirety an exception to treating a youthful offender as an adult offender." *Merriman*, 265 S.W.3d at 199-200. Indeed, KRS 640.030 is unique to youthful offenders in offering them a chance at probation in lieu of being committed to an adult facility under the supervision of Corrections. But KRS 640.030 is not the current vehicle under which Bloyer sought probation; KRS 640.075(4) is. In any event, our Supreme Court has subsequently deemed the language in *Merriman* "broad" and explicitly held that it "is confined to application of the probation-eligibility constraints of the Violent Offender Statute to youthful offenders." *Edwards v. Harrod*, 391 S.W.3d 755, 760 (Ky. 2013). Because the Violent Offender Statute is not at issue here, neither is *Merriman*.

-18-

Nonetheless, Bloyer also relies upon *Merriman*'s conclusion that the Violent Offender Statute was inapplicable to youthful offenders even though there was not statutory language to that effect. In fact, the Court remarkably said the lack of language exempting youthful offenders from the Violent Offender Statute was "equally as consistent with oversight as it is with intention . . . ." *Merriman*, 265 S.W.3d at 200. Reasoning by analogy, Bloyer argues the lack of express statutory language exempting youthful offenders from the probation ineligibility requirements of KRS 532.045(2) is a legislative mistake correctable by the judiciary, not a deliberate choice by the General Assembly.

But *Taylor* specifically rejected a similar argument that it was a "simple mistake" for the General Assembly to not specifically exempt youthful offenders from KRS 532.045. *Taylor*, 945 S.W.2d at 423. Because this case is remarkably like *Taylor* and dissimilar from *Merriman*, we must follow *Taylor's* logic to reject Bloyer's functionally indistinguishable argument.

We acknowledge some degree of tension between our Supreme Court's broad statement in *Merriman* that the lack of statutory language exempting youthful offenders from the Violent Offender Statute was consistent with being a drafting mistake and the same Court's refusal in *Taylor* to accept that the General Assembly made a "simple mistake" by not specifically excluding youthful offenders from KRS 532.045. However, any reconciliation of those seemingly

-19-

conflicting approaches to statutory construction is within the province of our Supreme Court to resolve. And to the extent there is a conflict, we follow *Taylor* as it is much more directly on point.

We also recognize that *Merriman* noted that it would be an "exercise in futility" for courts to conduct the age-eighteen hearings mandated by KRS 640.030 if the court had no option at those hearings other than to commit a youthful offender to Corrections. *Merriman*, 265 S.W.3d at 200. Yet it would appear that *Taylor* leads to just such "futile" proceedings since youthful offenders such as Bloyer may not be probated and thus must be committed to Corrections. In other words, we understand that the age-eighteen hearing for offenders such as Bloyer may appear to lack practical utility since the court is forbidden to take a "second look" at probation. This hearing, however, does afford the sentencing court the ability to allow a youthful offender to remain in the care of DJJ to complete a treatment program if it can be completed before the youthful offender reaches the age of eighteen (18) years and five (5) months, which is not insignificant even if not applicable in every case.

Again, however, the facial conflict between our Supreme Court's holding in *Taylor* that youthful offenders satisfying the criteria of KRS 532.045(2) are ineligible for probation and its sweeping statements in *Merriman* decrying the idea of functionally useless age-eighteen hearings is not a riddle which we, an

-20-

intermediate appellate court, may solve. Any gulf between the logic of *Taylor* and *Merriman* must be bridged by our Supreme Court.

## 2. *Britt*

*Britt* involved a determination of the effect of language in KRS 635.020(4) regarding transferring youthful offenders that are accused of committing a felony with a firearm to circuit court. Plainly, that issue is irrelevant to this case.

Nonetheless, Bloyer argues *Britt* held that all youthful offenders are entitled to the sentencing options under KRS 640.030(2), regardless of any other statutory prohibitions on probation for specific classifications of the offense in the criminal code. We disagree.

First, *Britt*'s holding is not as expansive as Bloyer's cherry-picked language would indicate. *Britt* states more fully that "*every child transferred to circuit court pursuant to KRS 635.020(4) after the effective date of July 15, 1997,* will be transferred as a youthful offender, and, thus, all ameliorative sentencing procedures authorized for youthful offenders, particularly those set out in KRS 640.030 and 640.040, are available to that child." *Britt*, 965 S.W.2d at 150 (emphasis added). Bloyer was not transferred to circuit court pursuant to KRS 635.020(4), so *Britt* affords him no relief. Moreover, there is no indication that the Court in *Britt* had any reason to assess how its holding impacted youthful offenders

otherwise ineligible for probation under KRS 532.045 and *Taylor*.  In sum, *Britt*

does not provide a proper basis for us to ignore *Taylor* and the "notwithstanding"

clause of KRS 532.045 to find Bloyer is eligible for probation under KRS

640.075(4).

### F.  Constitutional Issues

Finally, Bloyer briefly raises two main constitutional issues.  First, he

contends deeming him ineligible for probation violates the Eighth Amendment to

the United States Constitution.  Second, he contends deeming him ineligible for

probation would be an arbitrary act which lacks a rational basis and, thus, violates

Section Two of the Kentucky Constitution.  Again, these appear to be matters of

first impression as the parties have not cited, nor have we independently located,

precedent resolving those arguments.  We find no constitutional infirmities here.

### 1.  Eighth Amendment Argument[3]

---

[3] Preservation of this issue is highly suspect.  Bloyer's motion for probation did not cite the Eighth Amendment.  Bloyer did cite the Eighth Amendment in his CR 59.05 motion, but a party "cannot invoke CR 59.05 to raise arguments and to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005) (footnote omitted).  Bloyer also argues that no preservation is required as the issue involves sentencing.  But as previously stated, the so-called age-eighteen "resentencing" is not really a sentencing, *Commonwealth v. Carneal*, 274 S.W.3d 420, 428 (Ky. 2008).  Similarly, a hearing held on a motion to reconsider probation under KRS 640.075(4) is not a sentencing.  Appellate courts recognize that illegal sentences "must always be correctable." *Phon v. Commonwealth*, 545 S.W.3d 284, 307 (Ky. 2018).  But not every issue which stems from a sentencing hearing exempts a party from the preservation requirement. *Webster v. Commonwealth*, 438 S.W.3d 321, 325-26 (Ky. 2014) (explaining the narrow types of unpreserved sentencing issues an appellate court will review).

Bloyer contends deeming him ineligible for probation violates the proportionality requirement of the Eighth Amendment. As we understand it, the crux of Bloyer's somewhat disjointed argument is that rendering a youthful offender ineligible for probation is disproportionate because children are different than adults and foreclosing youthful offenders from probation eligibility deprives them of being able to present mitigation evidence.

The Eighth Amendment to the United States Constitution prohibits infliction of "cruel and unusual" punishment. Though it does not mention proportionality, the Eighth Amendment nonetheless encompasses a proportionality requirement. *See, e.g.*, *Phon*, 545 S.W.3d at 298. Strict proportionality is not required, however, since the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* (internal quotation marks and citations omitted). Simplified, the Eighth Amendment requires a sentence to be "proportioned to both the offender and the offense." *Id.* at 291 (internal quotation marks and citations omitted). Courts review proportionality claims "according to

---

The Commonwealth does not argue, surprisingly, that Bloyer's Eighth Amendment argument is unpreserved. And, for the reasons in this opinion, Bloyer is not entitled to relief. Thus, we will leniently examine the argument on the merits, although we could also have deemed it unpreserved and unreviewable since Bloyer has not asked for palpable error review. *Id.* at 325 ("Ordinarily, when an issue is unpreserved at the trial court, this Court will not review it unless a request for palpable error review under [Kentucky Rule of Criminal Procedure] RCr 10.26 is made and briefed by the appellant.").

the evolving standards of decency that mark the progress of a maturing society." *Id.* (internal quotation marks and citations omitted).

In what we perceive to be an effort to show that juvenile law is evolving towards leniency, Bloyer stresses post-*Taylor* United States Supreme Court decisions generally exempting juvenile offenders from the absolute harshest criminal penalties, such as the death penalty (*Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)) and life imprisonment without the possibility of parole. *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Obviously, however, Bloyer's fifteen-year sentence is not in the same penological league as those extreme sentences, which are the two harshest sentences any defendant may receive.

The core basis for *Roper* and *Graham* is the Court's conclusion that "juveniles have diminished culpability and greater prospects for reform, [so] they are less deserving of the most severe punishments." *Miller v. Alabama*, 567 U.S. 460, 471, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407 (2012) (internal quotation marks and citation omitted). In short, "[a]n offender's age is relevant to the Eighth Amendment, and criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Id.*, 567 U.S. at 467, 132 S. Ct. at 2462 (internal quotation marks and citations omitted).

We again do not disagree that minors are different psychologically from fully mature adults, as any parent or teacher could readily attest. But these differences do not entitle Bloyer to relief.

First, the existence of probation at all is a matter of legislative grace, not a right. *Burke v. Commonwealth*, 506 S.W.3d 307, 314 (Ky. 2016). Therefore, the General Assembly may set reasonable limits upon its grace by noting which defendants are eligible for probation. Second, the authorities relied upon by Bloyer do not show his constitutional rights were violated. Our Supreme Court's decision in *Taylor* is binding upon us. Though it does not appear as if the defendant in *Taylor* raised the constitutional arguments Bloyer raises, we do not conclude *Taylor* was overruled by silent implication by United States Supreme Court decisions prohibiting extreme punishments for juveniles.

Finally, we simply find nothing unconstitutionally disproportionate about Bloyer's sentence and/or probation ineligibility. Bloyer was convicted of a host of extremely serious criminal offenses for which he received a total sentence of fifteen years' imprisonment, below the statutory maximum. Even taking Bloyer's age into account, we fail to see any gross disparity between his significant crimes and his relatively lenient sentence. Also, Bloyer's age was not ignored. He was afforded treatment by the Department of Juvenile Justice for many years. Moreover, we recognize that Bloyer had a right at his age-eighteen hearing to be

"afforded a meaningful opportunity to controvert the evidence against him and to present evidence in mitigation of punishment." *Commonwealth v. Jeffries*, 95 S.W.3d 60, 63 (Ky. 2002). But the true issue in this case does not involve a decision made pursuant to an age-eighteen hearing at which a youthful offender was not permitted to present evidence. This case involves a decision made pursuant to a KRS 640.075(4) hearing, at which the trial court permitted Bloyer to call several witnesses and did not otherwise restrict his ability to present evidence.

In short, Bloyer has failed to show an Eighth Amendment violation.

## 2. Kentucky Constitution Section Two[4]

Before we address Bloyer's argument regarding Section Two of the Kentucky Constitution, we note that he also fleetingly refers to Section Eleven of the Kentucky Constitution, which contains a panoply of protections for persons accused of committing crimes, such as the right to meet witnesses "face to face . . . ." It is difficult to discern Section Eleven's role in Bloyer's appeal as he does not explain how deeming him ineligible for probation violates that constitutional section. In fact, he does not even specify which of the various subparts of Section Eleven he believes is applicable. It is not our job to construct arguments for parties. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

---

[4] This Section Two argument contains the same preservation issues as the Eighth Amendment argument, and we will address it in the same manner for the same reasons.

In short, simply citing to a multi-faceted constitutional provision without explaining which subpart is germane to the case (and why it is germane) is insufficient to raise a cognizable argument,[5] so we decline to examine further Bloyer's fatally terse, vague Section Eleven argument.[6]

Section Two of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." That section's focus on preventing arbitrary action has been interpreted to "embrace both due process and equal protection of the laws, both fundamental fairness and impartiality." *Pritchett v. Marshall*, 375 S.W.2d 253, 258 (Ky. 1963). Indeed, when reviewing an equal

---

[5] As an illustrative example only, we recently noted that a party had failed to raise a proper argument by merely claiming a violation of Section 59 of our Kentucky Constitution without specifying which subsection therein was at issue. *Calloway County Sheriff's Department v. Woodall*, Nos. 2018-CA-001509-WC and 2018-CA-001632-WC, 2019 WL 2562972, at *3 (Ky. App. Jun. 21, 2019).

[6] Similarly, the last sentence of Bloyer's argument states, without explanation, that "application of KRS 342.045 [sic] to preclude consideration of probation violates the Fourteenth Amendment to the United States Constitution and Section 2, 7, and 11 of the Kentucky Constitution . . . ." Appellant's brief at 22. Bloyer does not explain the involvement of the Fourteenth Amendment or Section Seven of the Kentucky Constitution (which holds "sacred" the right to a jury trial and thus has no immediately apparent relevance here). We can guess that Bloyer's reference to the Fourteenth Amendment was an effort to raise an Equal Protection Claim but saying that only reinforces the problem: we have to guess as to the relevance of a cite to the Constitution. Bloyer offers similarly underdeveloped, one-sentence-type arguments about Sections Two, Seven, and Eleven in his Eighth Amendment argument.

We decline to address all these insufficiently developed, fatally conclusory constitutional arguments. Courts do not issue rulings based upon hunches and hypotheses as to what a party is trying to argue, especially when the arguments involve alleged constitutional infirmities. In plain English, a party may not obtain relief simply by crying, "Hey, no fair! That violates the Constitution!"

-27-

protection challenge, our Supreme Court has held that "[t]he standards for legislative classification under the state constitution are the same as those under the Fourteenth Amendment to the federal constitution and a single standard can be applied to both the state and federal constitutions." *Commonwealth v. Howard*, 969 S.W.2d 700, 704 (Ky. 1998).

Generally, the test for whether governmental action violates Section Two (*i.e.*, is arbitrary) is whether the act or statute "is reasonably within the scope of a legitimate public purpose." *Moore v. Ward*, 377 S.W.2d 881, 883 (Ky. 1964). Essentially, "whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary." *Commonwealth v. Harrelson*, 14 S.W.3d 541, 547 (Ky. 2000) (quoting *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co.*, 691 S.W.2d 893, 899 (Ky. 1985)). Bloyer's argument is framed in terms of an equal protection violation, so we review the matter under the rational basis test. *Howard*, 969 S.W.2d at 703 ("Under the rational basis test, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").[7] Under the rational basis test, the "person

---

[7] If the classification at issue involved a suspect class, such as race, or interfered with a fundamental right we would use a more rigorous examination standard. *Howard*, 969 S.W.2d at 702-03. But probation is not a fundamental right and Bloyer has not argued that he is a member of a suspect class. Indeed, our Supreme Court has succinctly held that "[j]uveniles are not members of a suspect class and there is no constitutional right to be treated as a juvenile."

-28-

challenging a law upon equal protection grounds . . . has a very difficult task because a law must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Commonwealth ex rel. Stumbo v. Crutchfield*, 157 S.W.3d 621, 624 (Ky. 2005). Statutes are presumed to be constitutionally valid, and Bloyer bears the burden to overcome that strong presumption. *Buford v. Commonwealth*, 942 S.W.2d 909, 911 (Ky. App. 1997).

Incest is a shocking, undeniably serious crime. The crimes are rendered even more heinous here since the victims were young minors. Even accepting, solely for purposes of argument, Bloyer's contention that science shows juveniles are less likely to reoffend than adults, we readily conclude that the General Assembly had a rational reason for denying probation under KRS 532.045(2) to defendants, youthful offenders and adults alike, who were convicted of committing incest: protecting the safety of the public. Indeed, Bloyer's December 2018 juvenile sexual offender risk re-assessment report opines that Bloyer "continues to remain a high risk for sexual reoffending and has chronic homicidal ideations about killing his adoptive parents and siblings (victims)."[8] We reject Bloyer's argument that

---

*Caldwell v. Commonwealth*, 133 S.W.3d 445, 453 (Ky. 2004), *overruled on other grounds by Hall v. Commonwealth*, 551 S.W.3d 7 (Ky. 2018). Bloyer also uses the rational basis test in his brief. In short, we will use the rational basis test to analyze Bloyer's argument.

[8] The report acknowledges that methodologies for determining risk assessments for juveniles are imperfect. Even so, there is no indication that the report is inaccurate or unworthy of reliance.

his probation ineligibility violates Section Two of the Kentucky Constitution.

## **CONCLUSION**

For the foregoing reasons, the judgment of the Hart Circuit Court is affirmed.

THOMPSON, L., JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Suzanne A. Hopf
Directing Attorney
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky