RENDERED: OCTOBER 3, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0629-MR

COMMONWEALTH OF KENTUCKY,
*EX REL.* ATTORNEY GENERAL
RUSSELL COLEMAN                                                    APPELLANT


|            | APPEAL FROM FRANKLIN CIRCUIT COURT |
|------------|------------------------------------|
| v.         | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|            | ACTION NO. 23-CI-00082             |


PERRY COUNTY FISCAL
COURT, AS A POLITICAL
SUBDIVISION AND ON
BEHALF OF THE
RESIDENTS OF PERRY
COUNTY, KENTUCKY;
ANDREW BESHEAR,
GOVERNOR,
COMMONWEALTH OF
KENTUCKY; CITY OF
BARDSTOWN,
KENTUCKY; CITY OF
BEAVER DAM,
KENTUCKY; CITY OF
BEREA, KENTUCKY; CITY
OF ELIZABETHTOWN,
KENTUCKY; CITY OF
HAZARD, KENTUCKY;
CITY OF KUTTAWA,

KENTUCKY; CITY OF
MADISONVILLE,
KENTUCKY; CITY OF
MOREHEAD, KENTUCKY;
CITY OF PIKEVILLE,
KENTUCKY; CITY OF
PRESTONSBURG,
KENTUCKY; AND DENNIS
KEENE, COMMISSIONER,
KENTUCKY
DEPARTMENT OF LOCAL
GOVERNMENT                                                                APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  EASTON, A. JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE:  The Appellant, Commonwealth of Kentucky, *ex rel.* Attorney

General Russell Coleman ("OAG") appeals from the Order of the Franklin Circuit

Court which held that KRS[1] 91A.400 is unconstitutionally arbitrary under Section

2 of the Kentucky Constitution as applied to the Appellee, the City of Hazard

("Hazard").  The circuit court ruled that the statute created an arbitrary

classification by granting similarly situated cities taxing authority while depriving

the same authority to Hazard without any rational basis to do so.  The circuit

court's remedy was affirmative injunctive relief.  The circuit court not only

---

[1] Kentucky Revised Statutes.

declared the law unconstitutional as applied to Hazard but also ordered the Governor's Office of Local Government to include Hazard on the list of cities eligible to impose the restaurant tax permitted by KRS 91A.400.

We have carefully examined the record and fully considered the written and oral arguments of the parties. We determine that KRS 91A.400 is constitutional even as applied to Hazard. We further rule that Hazard is barred by considerations of equity from receiving the relief granted by the circuit court. We thus reverse the Franklin Circuit Court and remand for dismissal of the case.

**FACTUAL AND PROCEDURAL HISTORY**

Some Kentucky constitutional history is required to understand the context of the statute at issue. Before our most recent state constitution was enacted in 1891, there were no constitutional provisions specifically governing municipalities. Cities were chartered by the General Assembly, and a bewildering array of laws applied to each city as the cities chose their structure and powers with individualized sanction from the General Assembly. This ineffective *ad hoc* approach to city government was a major factor in the decision to enact several provisions of the 1891 Kentucky Constitution.

The Chairman of the Committee on Municipalities for the 1890-91 Constitutional Convention reported what would become Section 156 of the Constitution and followed with these comments:

The trend of all action on the part of the Convention has been to secure, as far as possible, uniformity in the operation in the laws of the Commonwealth. We have had in Kentucky special legislation run mad. No two cities in the Commonwealth are governed by a similar code of laws, and in the ordinary routine of corporate work and corporate action no two are controlled by similar provisions, but each, according to the caprice and whim of each particular local representation "did that which was right in its own eyes."

1890-91 *Const. Debates* at 2228.

KY CONST. Section 156 established six classes of cities based on their population. The goal was to have all cities within a class governed by the same laws as to organization and powers of such cities. Of relevance to the issue presented by this case, a "fourth class city" was a city with a population between 3,000 and 7,999 residents.

The duty of the General Assembly with respect to these classifications was mandatory:

The General Assembly *shall* assign the cities and towns of the classes to which they respectively belong, and change assignments made as the populations of said cities may increase or decrease, and in the absence of other satisfactory information as to their population *shall* be governed by the last proceeding Federal census in so doing; but no city or town shall be transferred from one class to another, except in pursuance of a law previously enacted and providing therefore.

1890-91 *Const. Debates* at 6039 (emphasis added).

-4-

The purpose of the requirement for legislative action to reclassify a city was not so that the population categories could be ignored. The purpose was instead to provide notice to the cities and their respective residents to prepare for the changes coming with a reclassification. 1890-91 *Const. Debates* at 2133-34. The classes were "fixed by the Constitution" not by the whim of the General Assembly. 1890-91 *Const. Debates* at 2130. The drafters were justifiably concerned about leaving the classes to the legislative branch. "Left to the General Assembly, classification might become the subject of 'legislative jugglery.'" *Id.*

Over the next hundred years, legislative jugglery is what we got. Numerous statutes governed how cities of certain classes were governed and what they could do. Despite the constitutional mandate, a city did not have to move to another class if it did not want to do so. That city might like certain aspects of being in one class over another. Without a legislative change to the classification, there could be no change in classification according to Section 156. The result was that many cities were not reclassified yet were obviously not in the correct class.

The concern about this potential and eventually realized problem was expressed during the convention. Delegate Bullitt from McCracken County asked: "There is no apprehension that Louisville might sink below its present

population?" to which Chairman Young[2] answered: "It provides, where a city does, the Legislature *shall* place it in a smaller class." 1890-91 *Const. Debates* at 2132 (emphasis added).

We will discuss only two cities, both participants in this case, to make the point about inaccurate classification. In this discussion, we will rely (as the General Assembly was supposed to do) on the United States Decennial Census data.[3] Elizabethtown was classified as a fourth class city as of 2014 despite its population of over 30,000. Hazard was then classified as a third class city despite its population of approximately 5,000.

Elizabethtown was in fact a fourth class city for many of the years between 1930 and 1960. It crossed the line into third class status sometime between 1950 and 1960. Hazard may never have been a third class city by population. The closest it got was in the 1940 census which listed a population of 7,397. We are told that Hazard's designation as a third class was made in 1950. It

---

[2] Bennett Henderson Young was the Chairman of the Committee on Municipalities. Originally from Nicholasville, Young was an officer in the Confederate Army. He led the raid on St. Albans, Vermont, from Canada during the Civil War. After the war, Young moved to Louisville and represented that city at the 1890-91 Constitutional Convention. Young was the founder of the first orphanage for black children in Louisville as well as a school for the blind. He is known as the Father of the Louisville Free Public Library. Wade Hall, *Louisville 200*: *Reflections of a City*, Friends of the Louisville Free Public Library, 1978.

[3] Judicial notice may be applied to the federal census. Kentucky Rules of Evidence 201(b)(2).

is possible that actual population between the 1940 and the 1950 census may have temporarily justified this designation, but there is no evidence of that in the record.

While the six-class system was in effect, KRS 91A.400 was enacted in 1980. It first allowed only fifth class cities to impose up to a 3% sales tax at restaurants. In 1986, the statute was amended to allow fourth class cities to enact this tax. Elizabethtown, which clearly by then was not by population a fourth class city, enacted this tax because it legally could. Hazard could not do so because it was and still is technically a third class city.

Perhaps due to frustration with the inconsistencies still prevalent with the class system, an amendment to Section 156 was put on the ballot in 1994, which was ratified by the voters.[4] This repealed Section 156 and replaced it with Section 156a. This newer section now reads:

> The General Assembly may provide for the creation, alteration of boundaries, consolidation, merger, dissolution, government, functions, and officers of cities. The General Assembly shall create such classifications of cities as it deems necessary based on population, tax base, form of government, geography, or any other reasonable basis and enact legislation relating to the classifications. All legislation relating to cities of a certain classification shall apply equally to all cities within the same classification. The classification of all cities and the law pertaining to the classifications in effect at the time of adoption of this section shall remain in effect until otherwise provided by law.

---

[4] The Amendment passed with a vote of 273,142 in favor and 233,189 against. *Amendment #1*, Commonwealth of Kentucky, State Board of Elections (1993).

Despite this replacement of Section 156 in 1994, the General Assembly left the six-class system in effect for twenty more years until 2014. It no doubt took some time to figure out all the statutes that would have to be amended if the population class system was replaced, although twenty years seems a bit much. Still, eventually, in 2014, the General Assembly enacted House Bill 331 ("HB 331").

One effect of HB 331 was to eliminate the six-class system and replace it with a two-class system. KRS 81.005. Cities were now to be classified as either "first class cities" or "home rule cities." This classification was based not on population but on the "form of government" as specifically allowed by Section 156a. Cities of the first class are cities having the alderman form of government, while home rule cities have the mayor-council plan, commission plan, or city manager plan. As it currently stands, again, only the city of Louisville is a first class city, while all remaining cities are home rule cities.

This finally leads us to the change in KRS 91A.400 made in 2014 as part of discarding the population class systems for cities with respect to the restaurant tax. It is this statute about which Hazard complains. The statute reads:

> (1) As used in this section, "authorized city" means a city on the registry maintained by the Department for Local Government under subsection (2) of this section.

(2) On or before January 1, 2015, the Department for Local Government shall create and maintain a registry of cities that, as of January 1, 2014, were classified as cities of the fourth or fifth class. The Department for Local Government shall make the information included on the registry available to the public by publishing it on its Web site.

(3) In addition to the three percent (3%) transient room tax authorized by KRS 91A.390(1)(b), the city legislative body in an authorized city may levy an additional restaurant tax not to exceed three percent (3%) of the retail sales by all restaurants doing business in the city. All moneys collected from the tax authorized by this section shall be turned over to the tourist and convention commission established in that city as provided by KRS 91A.345 to 91A.394.

Hazard waited over eight years after the effective date of the revised KRS 91A.400 to file a Complaint and Petition for Declaratory Judgment in the Franklin Circuit Court in January 2023. It challenged the constitutionality of KRS 91A.400. The Complaint named multiple parties, including the Governor, President of the Senate, and Speaker of the House, who were all eventually dismissed as parties. Several cities who had enacted the restaurant tax intervened in the case to protect their right to keep the taxing authority. Hazard challenged its exclusion under the statute with arguments based on multiple sections of the Kentucky Constitution, including Sections 2, 3, 59, 60, and 156a.

Both sides filed competing motions in July 2023. The Plaintiffs filed a motion for summary judgment while the OAG filed a motion to dismiss. As part of its argument for summary judgment, Hazard argued it had been erroneously classified as a third class city. Hazard argued one of the reasons the statute is arbitrary is because it does not allow a city to change from one classification to another after January 1, 2014.

The circuit court heard oral arguments in December 2023. It issued its Order Granting Summary Judgment and Declaratory and Injunctive Relief on May 14, 2024. The circuit court, using the rational basis standard, granted summary judgment to the Plaintiffs, determining that the revised KRS 91A.400 is unconstitutionally arbitrary. The circuit court stated the "statute clearly makes an arbitrary classification in granting the taxing authority to similarly-situated cities but depriving it to Hazard without any rational basis for the distinction, other than 'locale' based discrimination."[5] The circuit court further held "there can be no rational justification for an arbitrary classification that is based on frozen-in-time population figures, especially because the classification is both unconstitutionally under-inclusive and over-inclusive."[6]

---

[5] Order Granting Summary Judgment and Declaratory and Injunctive Relief, Page 579 of Record.

[6] *Id.*; Record at 580.

Initially, the circuit court order applied to all "similarly-situated cities." The circuit court first severed Sections 1 and 2 from the statute, as well as deleted the word "authorized" in Section 3. In an amended order entered in August 2024, the circuit court left the statute intact, and applied the remedy only to the parties before it. As a remedy, it ordered the Governor's Office of Local Government to include Hazard on the list of cities eligible to impose the restaurant tax. Having determined that the statute was unconstitutional under Section 2, the circuit court did not reach Hazard's remaining claims. This appeal follows.

**STANDARD OF REVIEW**

"In reviewing the constitutionality of a statute, we apply a *de novo* standard of review." *S.W. v. S.W.M.*, 647 S.W.3d 866, 873 (Ky. App. 2022) (internal quotation marks and citation omitted). "In considering an attack on the constitutionality of legislation, this Court has continually resolved any doubt in favor of constitutionality rather than unconstitutionality." *Id.* (citing *Hallahan v. Mittlebeeler*, 373 S.W.2d 726, 727 (Ky. 1963)).

The circuit court considered matters of an evidentiary nature in making its decision. Of course, this is proper when a declaratory judgment is sought. The very nature of declaratory relief does not anticipate summary judgment but rather judgment based on the record created through the truncated process provided by KRS Chapter 418. Under the circumstances, we will review

-11-

this case as one granting summary judgment as that was how it was argued and decided. The controlling issues are matters of law and do not involve any disputed facts.

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

## ANALYSIS

The OAG argues the circuit court erred in granting Hazard's Motion for Summary Judgment. First, it believes Hazard lacks constitutional standing. Next, it claims the circuit court erred in finding KRS 91A.400 arbitrary as applied to Hazard under Section 2 of the Kentucky Constitution. The OAG claims Hazard's remaining claims, which were argued to the circuit court but not decided

-12-

by it, are likewise meritless. Finally, the OAG believes laches bars the relief granted.

"The Court of Appeals is without authority to review issues not raised in *or* decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (emphasis added). The use of the conjunction *or* is not accidental. Although it may sometimes be best to remand for resolution of issues raised with the circuit court but which the circuit court declined to address, we "may affirm the trial court for any reason sustainable by the record." *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991). Because we are reviewing a summary judgment, we must look for any basis raised by the parties to the circuit court upon which the statute could be struck down and the circuit court thus affirmed.

## Standing

Standing is a question of law and is reviewed *de novo*. *Tax Ease Lien Investments 1, LLC v. Commonwealth Bank & Trust*, 384 S.W.3d 141, 143 (Ky. 2012). "To have standing to sue in Kentucky, the basic rule is that the person must have a 'judicially recognizable interest in the subject matter of the suit.'" *Commonwealth ex rel. Beshear v. Commonwealth Off. of the Governor ex rel. Bevin*, 498 S.W.3d 355, 361 (Ky. 2016) (citing *Ashland v. Ashland FOP No. 3*, 888 S.W.2d 667, 668 (Ky. 1994)).

-13-

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992), the United States Supreme Court established the following three requirements for standing: (1) injury, (2) causation, and (3) redressability. Kentucky adopted these requirements in *Commonwealth, Cabinet for Health & Family Services, Department for Medicaid Services v. Sexton By & Through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185 (Ky. 2018). The OAG challenges the third requirement of constitutional standing – redressability.

It is important to understand Hazard's actual complaint in the filing of the underlying suit and the alternative relief it sought. Hazard does not seem to take issue with the statute as a whole; its real issue is that it was misclassified as a third class city rather than a fourth class city. According to Hazard, this was just an overlooked error for decades. Hazard just wants the error belatedly corrected now.

The need for the correction arises from the revision of KRS 91A.400 which fixed the classification of cities to how they were classified as of January 1, 2014, at least for the purposes of *that* statute. Hazard's misclassification was not a problem for it before this legislation took effect. Nor was it a problem for over eight years after it took effect. We do not know whether Hazard accepted the error for so long because it preferred some of the benefits of being a third class city. But

-14-

now that it wants to enact the restaurant tax, it is prohibited from doing so under KRS 91A.400 because of the long-accepted error. Had Hazard been classified correctly years ago, it would have been considered a fourth class city, had the authority to enact the tax, and this case would not exist.

This brings us to the remedies Hazard proposed to the circuit court. Its first suggestion was to rule the entire statute unconstitutional. This could have the result of no city being able to have the restaurant tax in effect until the General Assembly passed a new and constitutional statute. Hazard's second proposal was to sever Sections 1 and 2 of the statute, as well as remove the term "authorized" from Section 3. This would have the effect of any city being able to enact the restaurant tax. The third option Hazard suggested, which was the remedy ultimately granted by the circuit court in the form of affirmative injunctive relief, was to simply add Hazard to the list of "authorized" cities by effectively reclassifying it as a former fourth class city, a classification it never officially held.

This leads us back to the redressability requirement of constitutional standing. We should not assume that redressability in the context of standing means that the parties will *like* the remedy available to them or that the court will choose to grant that particular remedy. Hazard complains of unconstitutionally arbitrary treatment. Striking down the entire statute would redress that wrong.

-15-

Hazard has standing. But as we shall see, even with standing, there are barriers to Hazard's claim. The first is our constitutional separation of powers.

"The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." KY. CONST. § 27. "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." KY. CONST. § 28.

The Kentucky Constitution "is unique in that it contains explicit provisions which, on the one hand, *mandate* separation among the three branches of government, and on the other hand, specifically *prohibit* incursion of one branch of government into the powers and functions of the others." *Conn v. Kentucky Parole Bd.*, 701 S.W.3d 76, 85 (Ky. 2024) (internal quotation marks and citations omitted) (emphasis original). The separation of powers among the three co-equal branches of government in Kentucky is to be "strictly construed." *Id.* Kentucky may have the strongest separation of powers in our federal union. *Sibert v. Garrett*, 246 S.W. 455 (Ky. 1922).

-16-

Ultimately, the remedy Hazard sought was the power to enact the restaurant tax allowed by KRS 91A.400. The words of that statute are clear, and the meaning is unambiguous. In this instance, the General Assembly has enacted legislation to allow only cities that were officially listed as fourth and fifth class cities on a certain date to enact the restaurant tax.

It is well established that the legislature alone has the authority to authorize a tax. *Appalachian Racing, LLC v. Fam. Tr. Found. of Kentucky, Inc.*, 423 S.W.3d 726, 738 (Ky. 2014). Neither the circuit court nor this Court has the power to grant Hazard the authority to enact the restaurant tax. This is a remedy that can be granted only by the General Assembly. Hazard does not dispute that the authority to authorize a tax is exclusively within the province of the General Assembly. It argues that the circuit court simply fixed the legislature's earlier constitutional mistake by recognizing Hazard as a fourth class city. The problem with this remedy is two-fold.

The first is that the power to classify cities is vested solely in the General Assembly even if the classification is wrong. *Holsclaw v. Stephens*, 507 S.W.2d 462, 475-76 (Ky. 1973). This has been recognized since the earliest days after the adoption of the 1891 Constitution. *See Green v. Commonwealth*, 95 Ky. 233, 24 S.W. 610 (1894). Specifically, a circuit court cannot change the classification of a city. "[W]here a city has been assigned by the Legislature to a

-17-

particular class, as provided by Section 156 of the Constitution, it must remain in that class until changed by the Legislature. Furthermore, that the courts have no power to transfer it to another class upon the ground that its population was not sufficient to entitle it to a place in the class to which it was assigned." *Griffin v. Powell*, 143 Ky. 276, 136 S.W. 626, 627 (1911). *See also Jernigan v. City of Madisonville*, 102 Ky. 313, 43 S.W. 448 (1897). It is clear the circuit court did not have the authority under the Kentucky Constitution to grant Hazard the remedy it sought; it *actually* changed Hazard's classification by placing it in a category into which the General Assembly did not place it.

Yet all parties acknowledge that Hazard has been misclassified. But that error does not grant the judicial branch the authority to do what only the General Assembly can do under the 1891 Constitution. A different branch of government "has no constitutional authority to exercise legislative powers even when the General Assembly has failed to do so." *Fletcher v. Commonwealth*, 163 S.W.3d 852, 869 (Ky. 2005).

The OAG acknowledges in its brief that many cities had been misclassified under the previous system.

> Twenty years after the 1994 amendments, a new classification system was overdue. The Kentucky League of Cities in 2014 determined that "one-third of all Kentucky cities" were "not in the appropriate class according to the population-based classification system created by Section 156 of the Constitution." Ky. League

-18-

of Cities, KLC Research Report:  Classification of Cities 3 (2014), https://perma.cc/C43G-CFL3.  That issue arose from "the confusing and intricate statutes that govern the various classes," which created "incentives and disincentives to change designation when a city's population qualifies it for a different class." *Id.* at 12.[7]

This was one of the reasons given for the enactment of HB 331, to simplify the classification of cities.  We could only speculate as to the reasoning for the original misclassification, or why Hazard never attempted to correct it during the decades it was misclassified and waited additional years from the time its classification was made permanent with respect to the specific power to tax at issue to challenge the classification.

The second issue is that the classifications under Section 156 no longer apply moving forward.  With the passage of HB 331, the General Assembly determined that cities would have only two classifications, based on their form of government.  Those previous population-based classifications would only be applicable up to January 1, 2014, at least insofar as KRS 91A.400 was concerned.  The General Assembly determined that only cities classified as the fourth or fifth class as of January 1, 2014, would qualify for the restaurant tax.

Hazard argues it "see[s] no reason why the Department for Local Government could not retroactively determine that the City of Hazard has at all

---

[7] Appellant Brief, Pages 6-7.

times maintained a population size within the fourth-class parameters and simply correct the mistake."[8]  This *is* something that could be done, but it is the *General Assembly* that must do this; the courts simply do not have the power to order it done.

The only remedy the courts are constitutionally able to grant to cure the alleged unconstitutionality of the statute is to strike down the statute in its entirety, which could lead to no city being able to have the restaurant tax.  This would surely cure any proclaimed constitutional deficiency, as it would no longer grant the privilege to enact the tax to only some cities.  But this would cause substantial harm and chaos for the cities that have already legally enacted the tax. Still, because we have this option which provides standing to Hazard, we must evaluate the substance of the constitutional arguments.

## Constitutionality of KRS 91A.400

Hazard challenged the statute under several sections of the Kentucky Constitution, but the circuit court addressed only Section 2, so we will begin our analysis there.  While the circuit court made its determination based only on Section 2, the same analysis may be applied to Hazard's argument that the statute violates Section 3 of the Kentucky Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

---

[8] Appellee Brief, Page 11.

-20-

Despite Hazard's assertion that strict scrutiny is the proper standard of review to be utilized, the circuit court correctly used rational basis. Hazard argues that this Court should recognize a constitutional right for all cities to be treated equally and review the question accordingly. We decline to do so.

> The equal protection provisions of the Kentucky Constitution are set forth in Sections 1, 2, and 3. *Zuckerman v. Bevin*, 565 S.W.3d 580, 594 (Ky. 2018). These sections provide in relevant part that "[a]ll men are, by nature, free and equal," Ky. Const. § 1, that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority," Ky. Const. § 2, and that "[a]ll men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men," Ky Const. § 3.

*Graham v. Sec'y of State Michael Adams*, 684 S.W.3d 663, 686 (Ky. 2023). These provisions of the Kentucky Constitution clearly state that "all men [people] are, by nature, free and equal." There is no constitutional provision that all cities must be treated equally, only that cities officially within a legislatively determined classification must be treated equally.

The issue in this case is, quite simply, an economic issue – taxation. In determining the constitutionality of statutes, rational basis scrutiny "applies to statutes that merely affect only social or economic policy." *Calloway Cnty. Sheriff's Dep't v. Woodall*, 607 S.W.3d 557, 564 (Ky. 2020). To meet the rational basis standard, a "legislative act must be rationally connected to the purpose of the

power for which the legislative body's power exists." *City of Lebanon v. Goodin*, 436 S.W.3d 505, 510 (Ky. 2014). Under Kentucky law, any "classification must be supported by a 'reasonable basis' or a 'substantial and justifiable reason.'" *Calloway Cnty. Sheriff's Dep't*, *supra*, at 564.

"Analysis begins with the presumption that legislative acts are constitutional." *Cain v. Lodestar Energy, Inc.*, 302 S.W.3d 39, 43 (Ky. 2009). "A classification by the legislature should be affirmed unless it is positively shown that the classification is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis." *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 19 (Ky. 1985). "[A] statute does not have to be perfect to pass constitutional muster." *Cornelison v. Commonwealth.*, 52 S.W.3d 570, 573 (Ky. 2001).

Hazard argues KRS 91A.400 is arbitrary because it utilized an arbitrary date when selecting the class a city previously held in order to determine if a city was allowed to enact the restaurant tax. Hazard insists that using this sole element as the determining factor is unconstitutional, because it does not permit any other considerations, such as population change or error. We must disagree that using a specific date in this instance is arbitrary.

Prior to HB 331 being enacted, the obviously inaccurate six-class classification of cities was in effect. HB 331 was signed into law by Governor

Steve Beshear on April 10, 2014. Up to that point, only cities designated as fourth or fifth class cities could enact the restaurant tax. The legislature decided to allow those cities who were already designated as "authorized cities" to continue to have the power to enact the restaurant tax at the time the legislation changed the classification system. This was not irrational or arbitrary.

When HB 331 went into effect, the six-class system no longer existed, so choosing the same year as the cut-off date for the authority to enact the tax makes logical sense. This served the goal of ensuring that cities who had acted lawfully despite the legislatively unenforced constitutional class provisions were not harmed by a change in the law. But it drew a bright line to not allow any more cities to impose the tax. That is a rational basis for the classes set out in KRS 91A.400.

Hazard had been misclassified for decades and never had the authority to enact the tax. It never sought to have their designation corrected. Had it done so prior to 2014, it would have had the ability to levy the tax it now wishes to enact. It is not arbitrary for the legislature to keep the pool of cities allowed to enact this tax the same as it was when it decided to change the classification system. Allowing those same cities to enact the tax, even if they had not decided to do so at the time the classification system was changed, allows for the same

rationale the General Assembly had when they enacted the statutes to allow the restaurant tax for fourth and fifth class cities originally.

It is rational to not choose to expand that taxation power to those who did not already have it. "[L]egislative bodies are allowed greater freedom in establishing classifications for tax purposes than in any other area of legislation." *Preston v. Johnson Cnty. Fiscal Ct.*, 27 S.W.3d 790, 795 (Ky. 2000). Simply because a specific date was chosen as a cut-off for allowing the enactment of the restaurant tax does not make it arbitrary. This state's highest court has held that the retroactive application of a tax statute, disallowing refunds from amended tax returns prior to a specific date, was constitutionally sound. *See Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392 (Ky. 2009). "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Yeoman v. Commonwealth, Health Pol'y Bd.*, 983 S.W.2d 459, 470 (Ky. 1998) (citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S. Ct. 1001, 1003, 35 L. Ed. 2d 351 (1973)).

We eventually realize that KRS 91A.400 is not really the problem. The problem is the failure of the General Assembly *and* Hazard to comply with Section 156 before 2014. While we cannot deny that KRS 91A.400 seems unfair to Hazard, unfairness does not necessarily equate to being unconstitutional. "Appellants' argument is essentially that this tax is unfair and therefore

unconstitutional.  This is not the correct standard.  While this Court is loath[] to engage in such platitudes as 'life is not fair,' the essence of our decision in this matter is that the legislature is not required to be fair or even reasonable in matters of taxation.  It is simply barred from behaving irrationally or arbitrarily." *Yeoman*, *supra*, at 470.

The circuit court based its ruling solely on Section 2 of the Kentucky Constitution.  Hazard had argued that KRS 91A.400 was unconstitutional on several other grounds.  While raised with the circuit court, that court did not decide those issues.  Because we should consider any basis apparent from the record as to why the circuit court could still be affirmed, we will now address those further issues.

Hazard next claimed that KRS 91A.400 violates the revised Section 156a of the Kentucky Constitution.  The general argument is that the statute does not classify cities based on the stated criteria or "any other reasonable basis."  The OAG counters that the classification used under KRS 91A.400 is cities that had the authority to enact the restaurant tax prior to January 1, 2014, and those that did not, and those cities within those two categories are treated the same, thus satisfying the constitutional mandate.  We agree.

Since the original enactment of the restaurant tax statute, the legislature has only allowed what were previously deemed to be fourth or fifth

class cities to enact the tax. The rationale was that this allowed these typically smaller (at one time at least) cities to collect additional tax revenue that larger cities were able to collect in other ways. The same rationale still applies, despite the change in general classification of cities. Section 156a is written to allow the legislature flexibility in classifying cities, and not all statutes must use the same classification. Different reasons for different classifications of cities can be used, so long as a rational basis exists for doing so.

While we acknowledge that this statute has the effect of being under-inclusive in some ways and over-inclusive in others, this does not necessarily render it unconstitutional. "By itself, the fact that a legislative classification is underinclusive will not render it unconstitutionally arbitrary. The legislature is free to choose to remedy only part of a problem. Furthermore, it may select one phase of a field and apply a remedy there, neglecting the others." *Holbrook v. Lexmark Int'l Group, Inc.*, 65 S.W.3d 908, 915 (Ky. 2001) (internal quotation marks and citations omitted).

Because the General Assembly may take one step at a time to address a problem, the argument that the General Assembly was required to authorize a corrective process in the revision to KRS 91A.400 is unavailing. "[W]here a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to

providing for a *casus omissus*, or cure an omission, however just or desirable it might be to supply an omitted provision." *Hatchett v. City of Glasgow*, 340 S.W.2d 248, 251 (Ky. 1960). A statute must be construed according to what was included and not by what might have been included.

When HB 331 was enacted, the General Assembly was faced with over 100 years of disregard of Section 156 by the General Assembly and complicit cities who did not seek to change their incorrect classifications. The General Assembly chose to stop this specific taxing authority and the inconsistency within the old classes of cities. It considered the disruption which would be caused by disallowing cities already imposing the tax or then considering the tax. It selected a date to create a list of cities holding the official status of fourth and fifth class cities. This still enabled those cities who had legislatively achieved that status to impose the tax. This "grandfathering" approach is not arbitrary: it has a reasonable basis and thus is not unconstitutional.

The way the statute is written allows smaller cities (those previously classified as fourth or fifth class cities) to enact the tax and collect that revenue, while also allowing those who have already enacted the tax in the past to continue to do so in reliance on previous law. The fact that Hazard was misclassified does not change this reasoning or render the statute unconstitutional. As has been stated many times before, the "constitutionality of a statutory classification will be upheld

if the classification is not arbitrary, or if it is founded upon any substantial distinction suggesting the necessity or propriety of the classification." *Wynn v. Ibold, Inc.*, 969 S.W.2d 695, 696 (Ky. 1998).

Hazard next argues that KRS 91A.400 violates Sections 59 and 60 of the Kentucky Constitution. "In a long and unbroken line of decisions this court has held that § 156 of the Constitution (classifying cities according to population for the purpose of organization and government), constitutes an exception to §§ 59 and 60, and that an act of the General Assembly limited to a city of a certain class and pertaining to municipal affairs is valid as being general rather than local or special legislation." *Dieruf v. Louisville & Jefferson Cnty. Bd. of Health*, 200 S.W.2d 300, 302 (Ky. 1947). Still, to be considered as such, the legislation must "be directed at the regulation of municipal powers or matters of local government." *Id.* at 303. The parties disagree on whether the taxing authority governed by KRS 91A.400 constitutes a "municipal power." Hazard argues it clearly does not, as cities do not have the power to collect taxes without authorization from the General Assembly.

The OAG relies on *Louisville/Jefferson County Metro Government Waste Management District v. Jefferson County League of Cities, Inc.*, 626 S.W.3d 623, 628 (Ky. 2021), in which the Kentucky Supreme Court stated: "[i]f legislation relating to local government is permitted by Section 156a, then it is obviously constitutional. Conversely, if not permitted under this section, reference

-28-

to other sections of the constitution is superfluous." In effect, if a law is constitutional under Section 156a, then it is constitutional under Sections 59 and 60. We have already determined that the classification in effect by KRS 91A.400 has a reasonable basis under Section 156a.

Hazard also relies on the *Louisville/Jefferson County Metro Government Waste Management District* decision, as an illustration of why the statute before us is unconstitutional. We find that case to be distinguishable. The legislation addressed in *Louisville/Jefferson County Metro Government Waste Management District* violated Section 156a's requirement that "[a]ll legislation relating to cities of a certain classification shall apply equally to all cities within the same classification." *Id.* at 630. The legislation treated home rule cities within Jefferson County differently than home rule cities outside of Jefferson County by granting them more powers over their waste management system. In the case at hand, the classification is between those cities that were authorized prior to January 1, 2014, and those that were not. As previously discussed, those cities within those two groups are treated the same.

"It is well established that in order for a law to be constitutionally general and not special legislation, the classification must be based upon a reasonable and natural distinction which relates to the purpose of the act and the legislation must apply equally to all in a class." *St. Luke Hosp., Inc. v. Health*

*Pol'y Bd.*, 913 S.W.2d 1, 3 (Ky. App. 1996).  The statute does not single out

Hazard in its prohibition of enacting the restaurant tax; it applies to any city that

was not designated as a fourth or fifth class city as of January 1, 2014.  As

previously stated, the purpose was to allow smaller cities, which had been properly

classified by the General Assembly, to collect additional revenue that larger cities

were able to collect by other means.  This is not an instance where one city

previously in the designated class was treated differently than another city

previously in the designated class.  KRS 91A.400 is not unconstitutional special or

local legislation.

Even if there was a constitutional violation, which we have not found,

we must recognize that the relief Hazard is seeking is in fact equitable relief.

Hazard wants the courts to correct its classification by an affirmative order to a

state official to overcome the impact of the limitation within KRS 91A.400.  "In

the equity practice, relief is conditioned on the fairness of the transaction[.]"

*Robenson v. Yann*, 5 S.W.2d 271, 274 (Ky. 1928).  A consideration of fairness, and

thus, equity, is the consideration of timeliness.  The OAG's final argument urges

us to apply the equitable doctrine of laches to this case.

> 'Laches' in its general definition is laxness; an
> unreasonable delay in asserting a right.  In its legal
> significance, it is not merely delay, but delay that results
> in injury or works a disadvantage to the adverse party.
> Thus there are two elements to be considered.  As to
> what is unreasonable delay is a question always

-30-

dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

*Greer v. Arroz*, 330 S.W.3d 763, 766 (Ky. App. 2011).

We conclude the doctrine must be applied here. We start with the initial unconstitutional inaction to correct Hazard's status. Since at least 1950, both the General Assembly and Hazard have done nothing to correct it. Many legislative sessions have passed during which the constitutional mandate could have been honored, but there is no evidence offered to us that this was even attempted. To correct this inaction by usurping the constitutional power of the General Assembly and permit *ad hoc* classification of a city by the judiciary would be a constitutional harm.

We note that the passage of the constitutional amendment in 1994 was also in violation of the constitution because the full text of the amendment was not on the ballot. *Westerfield v. Ward*, 599 S.W.3d 738 (Ky. 2019). Yet no one made any timely complaint about that constitutional failure in 1994, just as everyone ignored the many constitutional failures under Section 156. We will return to *Westerfield* shortly as we conclude our discussion of laches.

-31-

Due to the delay between the constitutional amendment and the enactment of HB 331, the General Assembly and Hazard had another twenty years to change the classification, but nothing was done. When the deadline in 2014 went into effect, no one did anything for another eight years until the filing of this suit. No reason is offered other than the desire to impose the restaurant tax, which finally motivated this suit.

That is simply too much delay. "The maxim that 'equity aids the vigilant, not those who sleep on their rights' has peculiar force when the injunctive power of the Court is invoked." *Greene v. Eversole*, 177 S.W.2d 559, 560 (Ky. 1944). We find Hazard's delay to be completely unreasonable, and the doctrine of laches should apply.

The application of laches was rejected in *Westerfield, supra*, at 746-47. The reason was that the challenge was promptly made before the issue was submitted to the voters. There is no suggestion in *Westerfield* that all prior examples of constitutional amendment ballot questions which failed to follow the full-text requirement were now fair game for challenges decades after the passage of the amendments.

Similarly, we should not condone decades of inaction to correct Hazard's classification. It would be inequitable to grant this equitable relief to Hazard. The other cities followed the law, imperfect as it may have been with

-32-

respect to classification. They acted as their classification gave them the authority to act.

We close discomfited by the attitude illustrated by this case toward the demands of our Constitution. We cannot repair the obvious classification inaccuracies, but the General Assembly can. We express no opinion on whether they should as this is a political question.

We are particularly troubled by the decision by Hazard to enact the tax during this litigation. Hazard was given fair notice. In our Order entered on September 7, 2024, we warned Hazard that it could enact the tax "*at its own peril*." (Emphasis in the original.) Sadly, upon any finality of this case, a lack of authority to impose the tax may present difficult questions of proper remedy.

## CONCLUSION

For the foregoing reasons, we hereby REVERSE the Franklin Circuit Court's finding that KRS 91A.400 is unconstitutionally arbitrary. We further determine the circuit court does not have the power under the Kentucky Constitution to grant Hazard the remedy it granted. There are no other constitutional bases upon which to affirm the circuit court. Additionally, we determine that Hazard waited for an unreasonable amount of time to challenge its constitutional classification under Section 156, Section 156a, and KRS 91A.400. We REMAND for the purpose of dismissing this case.

-33-

ALL CONCUR.

BRIEFS FOR APPELLANT
COMMONWEALTH OF
KENTUCKY, *EX REL.* ATTORNEY
GENERAL RUSSELL COLEMAN:

Matthew F. Kuhn
Solicitor General

John H. Heyburn
Principal Deputy Solicitor General

Jacob M. Abrahamson
Assistant Solicitor General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT COMMONWEALTH
OF KENTUCKY, *EX REL.*
ATTORNEY GENERAL RUSSELL
COLEMAN:

Jacob Abrahamson
Frankfort, Kentucky

*AMICUS CURIAE* BRIEF OF THE
KENTUCKY RESTAURANT
ASSOCIATION:

Mark A. Loyd
Stephanie M. Bruns
Helen V. Cooper
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES PERRY COUNTY
FISCAL COURT, AS A POLITICAL
SUBDIVISION AND ON BEHALF
OF THE RESIDENTS OF PERRY
COUNTY, KENTUCKY; AND THE
CITY OF HAZARD, KENTUCKY:

Edwin A. Jones
Jared K. Holt
Paducah, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES, THE CITIES OF
ELIZABETHTOWN,
PRESTONBURG, BEREA,
MADISONVILLE, KUTTAWA,
MOREHEAD, BEAVER DAM,
BARDSTOWN, AND PIKEVILLE,
KENTUCKY:

Jeffrey C. Mando
Olivia F. Amlung
Covington, Kentucky